630 So.2d 544 (1993)
Olen Clay GORBY, Appellant,
v.
STATE of Florida, Appellee.
No. 79308.
Supreme Court of Florida.
December 9, 1993.
Rehearing Denied February 8, 1994.
*545 Nancy A. Daniels, Public Defender and David A. Davis, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Richard B. Martell, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Olen Gorby appeals his conviction of first-degree murder and sentence of death. We have jurisdiction, article V, section 3(b)(1), Florida Constitution, and affirm the conviction and sentence.
Gorby was paroled from a Texas prison on April 11, 1990.[1] Later that month he met Robert Jackson, who offered him a ride to Tennessee. At trial Jackson testified that, after a couple of days in Tennessee, they drove to Panama City, Florida. The two men had a falling out, and Jackson went back to Tennessee. He returned to Panama City on Sunday, May 6, and checked into a homeless shelter. During a church service at the shelter that evening, Gorby came in and thanked everyone for the help they had given him and then left. The victim, who was crippled from polio, occasionally picked up people from the shelter to do odd jobs around his home. Two witnesses testified that they saw Gorby with the victim on May 6. The next day the victim's neighbor saw a note on the door of his house trailer. The note, saying he would return on Tuesday, aroused her suspicions, and, on entering the trailer, she found the victim dead of head injuries. A handwriting expert testified that Gorby, not the victim, wrote the note, and Gorby's fingerprint was found on a jar in the victim's kitchen. Receipts tracked the victim's credit cards through Louisiana and Texas.
On May 8, 1990 Gorby arrived at his friend Allan Brown's home in San Antonio, Texas, driving the victim's car. Brown and his wife saw Gorby replace the car's Florida license plate with Louisiana plates. Gorby told them that he had killed someone and stolen the car and some credit cards. Several days later Gorby sold the car to Cleo Callaway. A BOLO[2] had been issued for the car because of its connection with a homicide, and on June 19 the police found the car and arrested Callaway. San Antonio police arrested Gorby several days later, and he was extradited to Florida. Gorby made a statement acknowledging that he knew the victim, but claiming that Jackson killed the victim and stole his car and credit cards.
The state charged Gorby with first-degree murder, grand theft auto, burglary with a battery, and armed robbery. The jury convicted him as charged on the first three counts and of robbery on the fourth. At the *546 penalty phase the jury recommended that Gorby be sentenced to death, which the trial court did.
The public defender's office originally represented Gorby, but, when it sought permission to withdraw, the court appointed a private attorney to represent him. The day after being appointed, that attorney asked for and received a continuance. Seven months later, on the day trial began, counsel moved for another continuance because one of his two penalty phase investigators had not had time to work on the case, two witnesses in Texas could not be located, and the neuropsychologist needed more time to "confirm" his findings. After hearing both sides on this motion, the court denied the continuance, and trial commenced. Gorby now argues that the court committed reversible error by denying the continuance. We disagree.
Granting a continuance is within a trial court's discretion, and the court's ruling on a motion for continuance will be reversed only when an abuse of discretion is shown. Bouie v. State, 559 So.2d 1113 (Fla. 1990). As pointed out by the state, counsel had two investigators and also personally travelled to West Virginia to investigate Gorby's background, the mental health expert had more than adequate time to prepare for trial, and counsel did not allege that the Texas witnesses would ever be available. Gorby has not demonstrated that the court abused its discretion in refusing to continue the trial.
Callaway first identified Gorby from a photographic lineup and also identified him at trial. Gorby now argues that Callaway's identification should have been suppressed. Again, we disagree.
Citing Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), this Court has stated that the test for evaluating claims of unreliable identification is "whether the police employed a procedure so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification," with the reliability of the identification to be determined on the totality of the circumstances. Holsworth v. State, 522 So.2d 348, 352 (Fla. 1988). Three of the photographs, including Gorby's, used in the lineup had writing or printing on them.[3] After the suppression hearing, the trial court found that the lineup had been suggestive, but that the writing on the photos did not figure into Callaway's identifying Gorby and did "not give rise to a substantial likelihood of irreparable misidentification." Callaway testified that he spent about thirty minutes with Gorby and that he paid no attention to the writing on Gorby's photograph. We find no abuse of discretion in the trial court's denial of Gorby's motion to suppress Callaway's identification. See Power v. State, 605 So.2d 856 (Fla. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1863, 123 L.Ed.2d 483 (1993).
Gorby listed Jerry Wyche, a former cellmate, as a possible witness, but withdrew Wyche's name as a witness after the state listed him as a witness. The morning trial began defense counsel put the court on notice of a possible conflict because his former partner had represented Wyche in the past and Wyche's files were in Gorby's counsel's office. Counsel told the court that he had not looked at those files, and the court, finding no conflict at the current time, directed counsel not to look at Wyche's files.
We find no merit to Gorby's claim on appeal that his counsel suffered from a conflict of interest. To prevail when arguing a violation of the right to conflict-free counsel, "a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980); Bouie. Counsel never moved for permission to withdraw, seeking rather to inform the court of a possible conflict that the court took steps to keep from becoming an actual conflict. Moreover, counsel cross-examined Wyche extensively and called two other inmates to impeach Wyche's testimony. Gorby, therefore, has not shown an actual conflict that adversely affected his counsel's performance.
*547 Gorby also argues that, during closing argument, the state improperly bolstered the testimony of its handwriting expert. It is improper to bolster a witness' testimony by vouching for his or her credibility. May v. State, 600 So.2d 1266 (Fla. 5th DCA 1992). No improper bolstering occurred here, however. Rather, the prosecutor's comments simply drew the jury's attention to evidence of the expert's experience and qualifications after defense counsel sought to cast doubt on her testimony in cross-examination. We hold that Gorby has not shown reversible error regarding this issue.
Gorby objected to and moved for a mistrial on each of three occurrences at trial: 1) the prosecutor's saying during closing argument that Gorby showed no remorse; 2) Jackson's stating during his testimony that Gorby attacked him; and 3) a state's witness testifying that the victim told him that he had to help Gorby because Gorby had just gotten out of jail. The court sustained each objection, denied the motions for mistrial, and, in each instance, instructed the jury to disregard the objectionable statement. Motions for mistrial are addressed to the trial court's discretion and should be granted only when necessary to insure that a defendant receives a fair trial. Power; Johnston v. State, 497 So.2d 863 (Fla. 1986). Gorby has shown no abuse of discretion here. The curative instructions were sufficient, and there is no merit to his arguments that denying the motions for mistrial constituted reversible error.
We also see no error in Gorby's remaining issues regarding his conviction. The state introduced numerous photographs as well as a videotape of the crime scene. The court conscientiously considered all of the photos the state sought to introduce and rejected those it found to be too prejudicial or cumulative. No abuse of discretion as to the photographs and videotape has been shown. Additionally, the court did not err in directing Gorby to display his tatoos for several witnesses because such a display does not amount to impermissibly compelled testimony. See Schmerber v. California, 384 U.S. 757, 764, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1966) (a defendant can be compelled "to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture"); Macias v. State, 515 So.2d 206 (Fla. 1987).
No reversible error has been shown regarding Gorby's conviction, and the record contains competent, substantial evidence to support it. We therefore affirm Gorby's conviction of first-degree murder.
The court found the following aggravators had been established: 1) committed while under sentence of imprisonment;[4] prior conviction of violent felony;[5] 3) committed for pecuniary gain; and 4) heinous, atrocious, or cruel. Gorby offered evidence to support several statutory and nonstatutory mitigators, and, after conscientious consideration, the court found that the aggravators outweighed the mitigators and that death was the appropriate penalty. Now, Gorby argues that the facts do not support finding the heinous, atrocious, or cruel aggravator and that the instruction on that aggravator was unconstitutionally vague; that the court erred in deciding that Olen Gorby and Freddie Banks were the same person; and that the court should have instructed the jury on the penalties for Gorby's noncapital convictions. We find no merit to any of these contentions.
The trial judge spent two pages of the written order analyzing the facts of this killing in light of the heinous, atrocious aggravator and concluded "that this killing indicates a consciousless and pitiless regard for the victim's life and this homicide was especially heinous, atrocious, or cruel." This aggravator pertains to the nature of the killing itself, and the record supports finding it. Cf. Cherry v. State, 544 So.2d 184 (Fla. 1989), cert. denied, 494 U.S. 1090, 110 S.Ct. 1835, *548 108 L.Ed.2d 963 (1990); Chandler v. State, 534 So.2d 701 (Fla. 1988), cert. denied, 490 U.S. 1075, 109 S.Ct. 2089, 104 L.Ed.2d 652 (1989); Muehleman v. State, 503 So.2d 310 (Fla.), cert. denied, 484 U.S. 882, 108 S.Ct. 39, 98 L.Ed.2d 170 (1987). The trial court gave the expanded instruction on this aggravator as requested by the state. Thus, we see no error under Espinosa v. Florida, ___ U.S. ___, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), which invalidated our former standard instruction on the heinous, atrocious aggravator.[6]
Regarding the identity issue, the state proffered the testimony of a captain from the Bay County Sheriff's Office that detailed his examination of Gorby's Texas criminal records. That examination established that Freddie Banks was in fact Olen Gorby and that Banks' conviction was for a violent felony. After the proffer, the court held that the state had shown identity and the nature of the felony and instructed the jury that Banks and Gorby were the same person. The state proved the existence of the prior felony aggravator beyond a reasonable doubt, and Gorby has shown no error in the court's handling of this issue.
Finally, in Nixon v. State, 572 So.2d 1336 (Fla. 1990), cert. denied, ___ U.S. ___, 112 S.Ct. 164, 116 L.Ed.2d 128 (1991), we held that, during the penalty phase, there is no need to instruct the jury on the penalties for noncapital crimes a defendant has been convicted of. Gorby has not convinced us of any need to reconsider that holding.
Therefore, we affirm Gorby's sentence of death for his conviction of first-degree murder.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] He had been serving a sentence for burglary of a dwelling. Gorby has an extensive criminal history dating back to 1968 with multiple convictions of, among other things, burglary, robbery, armed robbery, and attempted homicide. He committed these crimes in six states under at least a dozen different names.
[2] Be on the look out.
[3] The legend on Gorby's photo read as follows: "Bay County, CCA, BCSO, PCPD, 06-06-90, Olen Clay Gorby, 90-4389, Charge 1." Gorby called himself "Charles Knott," not Olen Gorby, when he sold Callaway the car.
[4] Gorby had been released from prison on April 11, 1990 with a parole discharge date of September 24, 2003.
[5] In 1987 Gorby was convicted in Texas of robbery by threat, a violent felony in that state, under the alias of Freddie Banks.
[6] Even if there were error in the instruction, it would be harmless because the facts show this killing to be heinous, atrocious, or cruel under any definition of those terms. Cf. Thompson v. State, 619 So.2d 261 (Fla.), cert. denied, ___ U.S. ___, 114 S.Ct. 445, 126 L.Ed.2d 378 (1993).