690 So.2d 664 (1997)
Keith Darryl LEE, Appellant,
v.
STATE of Florida, Appellee.
No. 96-380.
District Court of Appeal of Florida, First District.
March 20, 1997.
*665 Steven A. Been, Assistant Public Defender, Office of the Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Mark C. Menser, Assistant Attorney General, Office of the Attorney General, Tallahassee, for Appellee.
PADOVANO, Judge.
Keith Darryl Lee, the defendant, appeals his conviction for first degree murder. At issue in the appeal is the validity of the defendant's waiver of a conflict of interest resulting from his court-appointed lawyer's previous representation of a key witness for the prosecution. The record does not show that the defendant was aware of his right to obtain other counsel at the time the trial court accepted the waiver. Consequently, we conclude that the waiver was ineffective. Because the error in accepting the waiver was prejudicial, we must reverse for a new trial.
A grand jury indicted the defendant for the first degree murder of Herman Curtis Dennard. The court appointed the Public Defender's Office to represent the defendant and the case was set for a jury trial on January 16, 1996. During a pretrial hearing in November 1995, the assistant public defender assigned to the case, Earl D. Loveless, disclosed to the trial court that the Public Defender's Office had recently represented Charles Kyles, a key witness against the defendant, on an offense for which he was then currently serving a sentence. Loveless also informed the trial court that he had personally represented Kyles in a 1985 case. Loveless told the trial court that he had no memory of his own prior representation of Kyles and indicated that he did not believe that it created a conflict of interest in this case.
In response to an inquiry from the trial court regarding the protection of Kyles' attorney-client privilege, Loveless explained that he and the prosecutor had discussed a possible stipulation to the number of Kyles' prior convictions so that there would be no need for any cross-examination on that issue. The trial court then engaged in the following dialogue with the defendant:
THE COURT: Okay. Let me ask, also. Mr. Lee, did you understand what Mr. Loveless just shared with us?
THE DEFENDANT: Yes, sir.
THE COURT: Do you understand that if there's a witness called to testify against you about something, one of the things your lawyer has a responsibility to do is tois to consider the credibility of that witness and to consider what attacks may be made upon the credibility of that witness. And sometimes obviously when a lawyer represents someone, they learn information about that person that is privileged, it is protected by the attorney-client privilege and that attorney can't disclose that information. He can't tell you what it is in this case because it would be violating Mr. Kyles' attorney-client privilege. And then he can't use it to impeach the witness although it might be good impeachment *666 evidence, significant impeachment evidence.
Now, when you say, Judge, I understand all that and I want to waive any conflict, then that says okay, you accept that Mr. Loveless won't be able to use any of that information, if any he hasand I don't know because he can't disclose it to me. He can't disclose it to you.
THE DEFENDANT: Yes, sir.
THE COURT: But when you say Judge, I'll waive the conflict, that means that if you're saying you're going to let this matter go forward and when he examines this witness, he will not be entitled to use any privileged information that he may gain from his representation of this witness in the past. Do you understand that?
THE DEFENDANT: Yes, sir.
THE COURT: Okay. Aredo you wish to waive that conflict and have Mr. Loveless continue to represent you during this trial?
THE DEFENDANT: Yes, sir.
Following this court appearance, the defendant wrote two letters to the trial court expressing his dissatisfaction with defense counsel on a number of issues. In the second letter, the defendant stated that he and Loveless had a conflict, that he had asked Loveless to file a motion to suppress evidence and other things, and had gotten no response. The defendant also stated in his second letter that he wanted Loveless removed from his case and that he wanted to represent himself.
Another hearing was held in December 1995 to determine whether the trial court should take any action on the issues raised in the defendant's letters. At that hearing, the defendant informed the trial court that he had been on antidepressants during the previous hearing when he waived his conflict of interest with Loveless and that he felt he had not made the right decision because certain things about Charles Kyles, one of the state's witnesses, needed to come out during trial. The defendant indicated that he wanted to withdraw his previous waiver of his right to conflict-free counsel and have the Public Defender's Office removed from his case on grounds that his previous waiver had not been knowingly and voluntarily entered. Prompted by the trial court's inquiry, the defendant conceded that he was still on antidepressants at the time of this second hearing. The trial court then determined, based on its own observations of the defendant at the prior hearing, that it would not revisit the conflict of interest issue because, in the court's view, the defendant's previous waiver had been knowingly, intelligently, and voluntarily made.
The defendant continued to complain about Loveless' performance and the trial court informed the defendant that Loveless would have to respond to each allegation and that the defendant should bring up all of his complaints about his counsel's performance at that time. The defendant then told the court that he was planted in a cell with Charles Kyles, a jailhouse informant who had been wired, that he told Loveless about this "entrapment," and that Loveless had ignored his concerns by saying that it was not entrapment. Loveless began to respond to these accusations, but said that he believed they were now getting into issues of strategy and privileged information that he felt he could not divulge. The trial court then ruled that the defendant had not described or proven any conduct that justified the removal of Loveless and the appointment of another lawyer in his place.
The trial court reminded the defendant of his right to court-appointed counsel, to hire his own lawyer, or to represent himself, and explained to the defendant that there was no reason to believe his current court-appointed lawyer would not continue to be his counsel should he choose to remain with the option of court-appointed counsel. At that point, the defendant informed the trial court that he wished to represent himself. He explained that he felt as though he was forced into representing himself because the court had denied his motion to have another lawyer appointed to represent him. The trial court then conducted a Faretta[1] inquiry and determined that the defendant had freely, voluntarily, *667 and knowingly waived his right to counsel and exercised his right to self-representation; however, the defendant soon changed his mind and the trial court authorized the continued representation of the defendant by attorney Loveless.
Shortly before jury selection on the first day of trial, Loveless indicated that he wished to file a motion to suppress the testimony of Charles Kyles. The trial court deferred hearing the motion until after jury selection and directed Loveless to inform the prosecutor of the authorities he planned to use in his argument. Following a brief recess, Loveless indicated that he might not make the suppression motion after all, but that he needed some time to consider it. Loveless then made no further mention of his suppression motion and Kyles ultimately testified that while he and the defendant were sharing a jail cell, the defendant confessed that he had killed Dennard. Kyles further testified that he informed law enforcement officers of the defendant's admission and they provided him with a recording device. Kyles stated that the defendant made the incriminating statement again, this time on tape, and the tape recording was played to the jury. At the conclusion of all the evidence, the jury returned a verdict of guilty on the charge of first degree premeditated murder. The defendant was immediately sentenced to life imprisonment with a twenty-five year minimum mandatory and he filed this appeal.
Implicit in the Sixth Amendment right to counsel is the right to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063-64, 80 L.Ed.2d 674 (1984). An actual conflict of interest can impair the performance of a lawyer and ultimately result in a finding that the defendant did not receive the effective assistance of counsel. Cuyler v. Sullivan, 446 U.S. 335, 345, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333 (1980); see also Holloway v. Arkansas, 435 U.S. 475, 481, 98 S.Ct. 1173, 1177, 55 L.Ed.2d 426, 434 (1978). When defense counsel makes a pretrial disclosure of a possible conflict of interest with the defendant, the trial court must either conduct an inquiry to determine whether the asserted conflict of interest will impair the defendant's right to the effective assistance of counsel or appoint separate counsel. Holloway, 435 U.S. at 484, 98 S.Ct. at 1178-79. In this case, there can be no doubt that attorney Loveless and the defendant had an actual conflict of interest. Attorney Loveless had personally represented a primary witness against the defendant in the past and his office had also represented that witness about the time he was assisting law enforcement officers in their effort to obtain a confession from the defendant.
The trial court proceeded on the assumption that defense counsel had an actual conflict of interest that might impair his ability to provide effective assistance to the defendant and focused the inquiry on the lawyer's statement that the defendant wished to waive that conflict of interest with counsel. As with a waiver of the right to counsel generally, a waiver of the right to conflict-free counsel must be shown by "clear, unequivocal, and unambiguous language." United States v. Rodriguez, 982 F.2d 474, 477 (11th Cir.1993), cert. denied, 510 U.S. 901, 114 S.Ct. 275, 126 L.Ed.2d 226 (1993); see also Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). In Larzelere v. State, 676 So.2d 394 (Fla.1996), our supreme court discussed the requirements of a valid waiver of the right to conflict-free counsel. Adopting the test in Rodriguez, the court in Larzelere held that "[f]or a waiver to be valid, the record must show that the defendant was aware of the conflict of interest, that the defendant realized the conflict could affect the defense, and that the defendant knew of the right to obtain other counsel." Id. at 403.
Each of the requirements set out in Larzelere is independent of the others and each is essential to a finding that a defendant's waiver of his right to conflict-free counsel was voluntary. In this case, the trial court met the first two requirements of the test but not the third. As the record plainly reveals, the defendant was aware of the conflict and the trial judge explained how the conflict might affect defense counsel's cross-examination of the state's witness, Charles Kyles. Yet the trial court failed to ascertain *668 whether the defendant knew of his right to obtain other court-appointed counsel, and an examination of other parts of the record does not reveal that the defendant had independent knowledge of that right before he purportedly made his waiver. Cf. U.S. v. Petz, 764 F.2d 1390, 1393-94 (11th Cir.1985)(failure to inform a defendant directly of his right to obtain other counsel did not invalidate the waiver because during the waiver hearing the trial court had referred to "independent counsel" and asked the defendant if he wished to proceed with "present counsel" and these references created a strong inference the defendant was aware of his right to obtain other counsel). To the contrary, it is clear from the defendant's letters to the trial court following the initial disclosure of the conflict, that the defendant thought he would be forced to represent himself if Loveless was removed from his case. The trial court did not inform the defendant of his right to obtain other counsel until the time of the second inquiry concerning the defendant's letters. By that time, the defendant had already purportedly waived the conflict and the trial court was refusing to allow him to withdraw the waiver. Consequently, we conclude that the trial court erred in finding that the defendant had voluntarily waived his right to conflict-free counsel.
The state concedes that the trial court's inquiry of the defendant regarding the conflict did not meet the test in Larzelere, but nevertheless argues that the defendant's conviction should be affirmed because the error was not prejudicial. We reject this argument. The assistance of counsel is among those "constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." Chapman v. California, 386 U.S. 18, 23 & n. 8, 87 S.Ct. 824, 827-28 & n. 8, 17 L.Ed.2d 705 (1967). This principle applies to cases in which the alleged deprivation of counsel is the result of a conflict of interests between a lawyer and client. See, e.g., Holloway v. Arkansas, 435 U.S. 475, 489-91, 98 S.Ct. 1173, 1181-82, 55 L.Ed.2d 426 (1978); Glasser v. U.S., 315 U.S. 60, 75-76, 62 S.Ct. 457, 467-68, 86 L.Ed. 680 (1942). For example, in Glasser, the United States Supreme Court held that it was not necessary for a reviewing court to determine the degree of prejudice resulting from an actual conflict of interest because the conflict itself demonstrated a denial of the right to counsel. See Glasser, 315 U.S. at 75-76, 62 S.Ct. at 467-68.
The reason appellate courts have declined to apply the harmless error rule to cases in which a defendant was deprived of the right to conflict-free counsel is that any action the lawyer refrained from taking because of the conflict would not be apparent from the record. As the Court explained in Holloway:
[A] rule requiring a defendant to show that a conflict of interestswhich he and his counsel tried to avoid by timely objections to the joint representationprejudiced him in some specific fashion would not be susceptible of intelligent, even-handed application. In the normal case where a harmless-error rule is applied, the error occurs at trial and its scope is readily identifiable. Accordingly, the reviewing court can undertake with some confidence its relatively narrow task of assessing the likelihood that the error materially affected the deliberations of the jury. But in a case of joint representation of conflicting interests the evilit bears repeatingis in what the advocate finds himself compelled to refrain from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process.
Holloway, 435 U.S. at 490, 98 S.Ct. at 1181-82 (citations omitted)(emphasis in original).
The decisions in Glasser and Holloway make it clear that an error in accepting a waiver of the right to conflict-free counsel cannot be excused as harmless error on direct appeal.[2] If, as in this case, the defendant preserves the conflict issue by raising it before trial and does not validly waive the conflict, the trial court's failure to conduct an *669 inquiry or appoint separate counsel in accordance with Holloway requires that the resulting conviction be reversed. We point out, however, that this rule of automatic reversal is limited to a conflict issue preserved for review on direct appeal. A different rule would apply if the validity of a waiver of the right to conflict-free counsel were first raised in a postconviction proceeding. When ineffective assistance of counsel is first asserted in a postconviction motion, the defendant must show that the conflict impaired the performance of the defense lawyer. Cuyler v. Sullivan 446 U.S. at 348, 100 S.Ct. at 1718. Even then, it is not necessary to show that counsel's deficient performance resulting from the conflict affected the outcome of the trial. As the Court held in Sullivan, prejudice is presumed. Id. at 349, 100 S.Ct. at 1718-19.
In summary, we conclude that the defendant had a right to proceed with conflict-free counsel and that the trial court erred in concluding that the defendant had validly waived that right. Defense counsel had an actual conflict of interest resulting from his own prior representation of a key witness against the defendant and the Public Defender's recent representation of that witness. Although the defendant initially said that he would proceed with the same lawyer despite the conflict, it is not clear that he knew at the time he made that statement that he had a right to obtain other court-appointed counsel. Consequently, the trial court erred in concluding that the defendant's waiver of his right to conflict-free counsel was voluntary and in refusing to honor the defendant's subsequent protest to the continued representation. Because the matter is not subject to a harmless error analysis, we must reverse.
Reversed.
ALLEN and MICKLE, JJ., concur.
NOTES
[1] Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
[2] Even if the validity of a waiver of the right to conflict-free counsel were subject to a harmless error analysis, the burden would be on the state, as the beneficiary of the error, to show beyond a reasonable doubt that the error was harmless. See Chapman, 386 U.S. at 24, 87 S.Ct. at 828; State v. DiGuilio, 491 So.2d 1129, 1138 (Fla. 1986). Thus, the state's claim here that the defendant failed to show prejudice would be unavailing in any event.