# Supreme Court of Florida

_____

No. SC14-1341
_____

**STATE OF FLORIDA,**
Petitioner,

vs.

**REUBEN ALEXIS,**
Respondent.

[July 9, 2015]

CANADY, J.

In this case we consider whether a trial court is required to obtain a conflict-of-interest waiver when criminal codefendants are represented by the same lawyer but there is no actual conflict of interest between the codefendants. The State of Florida seeks review of the decision of the First District Court of Appeal in Alexis v. State, 140 So. 3d 616 (Fla. 1st DCA 2014), on the ground that it expressly and directly conflicts with a decision of this Court, Gorby v. State, 630 So. 2d 544 (Fla. 1993), as well as a decision of another district court of appeal, Dixon v. State, 758 So. 2d 1278 (Fla. 3d DCA 2000), on a question of law. Alexis held that a waiver is required in the absence of an actual conflict, while Gorby and Dixon held that a

waiver is necessary only if there is an actual conflict. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

## FACTS

An off-duty police officer was providing security in the parking lot of a nightclub when a patron (hereinafter "the victim") reported that he had been accosted by two men at gunpoint and pointed out the car in which the two men were riding. With assistance from other police, the officer stopped the car and ordered the occupants to get out. Officers searched the car and found two loaded guns. At trial, the victim identified two of the car's occupants, Terry Guerrier and Respondent Reuben Alexis, as the men who had confronted him with guns. In her arrest report, the officer stated that after being advised of his rights against self-incrimination, Guerrier said that he had asked the victim to get out of a car occupied by some women who did not want him there, that the victim refused, and that Alexis had pulled the victim out of the car. Defense counsel expected that this testimony—as to an out-of-court statement by Guerrier incriminating Alexis—would be introduced at trial.

At a pretrial hearing on defense counsel's motion for severance of defendants and for separate trials under Florida Rule of Criminal Procedure 3.152(b)(2), defense counsel argued that because the State intended to introduce Guerrier's post-arrest statement against Alexis, there was a possible issue under

rule 3.152(b)(2) and <u>Bruton v. United States</u>, 391 U.S. 123 (1968), that needed to be addressed. After the court and the attorneys discussed the severance issue, Respondent's attorney brought up the issue of dual representation, which led to the following exchange:

> [DEFENSE COUNSEL]: And by the way Judge, since both young men are here, I discussed with them a possible conflict of interest here because of the facts. Terry Guerrier, though wants me to continue to be his attorney; because he emphatically denies ever making the statement to law enforcement. So I think that would take it out of the conflict. But I told him it was his call. And he's in the courtroom, but he's told me he wants me to continue to represent both of them. And Mr. Alexis says the same thing.
> [PROSECUTOR]: And, Your Honor, for [rule 3.850] purposes, could we inquire of the defendants to make sure that there is no conflict, and that they waive any possible conflict by being represented by the same counsel?
> . . . .
> THE COURT: Okay. And the State Attorney does want to make sure that you don't come back later; and file a claim and say [defense counsel] was ineffective, because he was representing you with a conflict. But you heard what [defense counsel] just said?
> DEFENDANT GUERRIER: Yes, sir.
> THE COURT: And knowing that there's that potential conflict, both of you still want him to be your attorney?
> DEFENDANT GUERRIER: Yes, sir.
> DEFENDANT ALEXIS: Yes, your Honor.
> THE COURT: Okay. Is that okay?
> [PROSECUTOR]: That should be sufficient, your Honor.
> THE COURT: Okay.
> [DEFENSE COUNSEL]: Thank you, Judge.

The defendants proceeded to trial jointly, represented by one privately retained attorney.

At trial, the victim testified that Respondent pulled him out of the car, that after he was pulled from the car, Guerrier pointed a gun at him, and that during the confrontation Respondent had a gun in his hand. Another witness, the victim's cousin and companion the night of the incident, testified that one of the defendants pulled the victim from the car and that Guerrier "pulled a gun" on the victim. The arresting officer testified that after being warned of his rights, Guerrier said that he had asked the victim to get out of a car occupied by some women who were friends of Guerrier and Alexis and that then Alexis had pulled the victim out of the car.

At a later point in the trial, after the State rested, the following exchange took place:

> THE COURT: Are the defendants going to testify?
> [DEFENSE COUNSEL]: Yes, sir.
> THE COURT: So I have got . . . instructions on—let me go ahead and ask you then, if that's your decision, because even though I always say it's a good idea to listen to your lawyer, and the final analysis in the decision of whether you testify or not is yours alone and you have a constitutional right not to testify and you also have a constitutional right to testify, but it has to be your decision. I tell the jury one thing based on what you decide to do. So, have you both decided that you do [wish] to be a witness?
> THE DEFENDANTS: Yes.
> THE COURT: Okay. All right, then I will –
> [PROSECUTOR]: Can we also just question again about, I know we questioned them before about any possible conflicts in their defenses and them waiving being represented by the same attorney.
> THE COURT: Let me ask you that too, [defense counsel] says you all decided [you were] not going to have separate juries, we're going to do it together and you all are going to waive any possible conflict there might be with him representing both of you, is that right?

- 4 -

THE DEFENDANTS: Yes.

THE COURT: Okay. I just want to make sure there's no problem down the road. Okay.

Both of the defendants testified that they pulled the victim out of the car together. They both denied possessing or displaying a gun during the encounter and they each denied that the other displayed or possessed a gun. As stated above, Respondent was convicted of aggravated assault with a firearm.

On appeal, initially Respondent's conviction was affirmed without opinion. See Alexis v. State, 65 So. 3d 1056 (Fla. 1st DCA 2011). However, on Respondent's petition claiming ineffective assistance of appellate counsel, the district court granted him a new appeal limited to the issue of whether "his waiver of the right to conflict-free trial counsel was invalid." Alexis v. State, 112 So. 3d 144, 144 (Fla. 1st DCA 2013). Upon consideration of the new appeal, the district court held that the trial court failed to conduct a sufficient inquiry when Respondent consented to his attorney representing both him and his codefendant and that the error could not be found harmless. See Alexis, 140 So. 3d at 618-19.

The district court grounded its decision on its earlier decision in Lee v. State, 690 So. 2d 664 (Fla. 1st DCA 1997), and this Court's decision in Larzelere v. State, 676 So. 2d 394 (Fla. 1996). In Lee, the court stated that when counsel discloses before trial a possible conflict of interest with the defendant, "the trial court must either conduct an inquiry to determine whether the asserted conflict of

interest will impair the defendant's right to effective assistance of counsel or appoint separate counsel." Lee, 690 So. 2d at 667. In Lee, the district court found that the defendant and defense counsel had an actual conflict of interest due to the circumstances surrounding defense counsel's recent representation of the State's main witness. The court turned to Larzelere for the "requirements of a valid waiver of the right to conflict-free counsel." Lee, 690 So. 2d at 667. In Larzelere, we said: "For a waiver [of conflict-free counsel] to be valid, the record must show that the defendant was aware of the conflict of interest, that the defendant realized the conflict could affect the defense, and that the defendant knew of the right to obtain other counsel." Larzelere, 676 So. 2d at 403 (citing United States v. Rodriguez, 982 F.2d 474, 477 (11th Cir. 1993)). The Lee court found that the trial court had "met the first two requirements of the test but not the third," Lee, 690 So. 2d at 667, and held that the court's error could not be deemed harmless. The court based the conclusion that such error could not be treated as harmless on cases where the United States Supreme Court reasoned that requiring a defendant to face trial with an attorney operating under a conflict of interest amounts to a denial of the right to counsel itself, see Holloway v. Arkansas, 435 U.S. 475 (1978); Glasser v. United States, 315 U.S. 60 (1942), superseded in part on other grounds by Fed. R. Evid. 104(a), the denial of which is never treated as harmless because prejudice is presumed. See Chapman v. California, 386 U.S. 18, 23 & n.8 (1967).

In the present case, the district court found that the inquiry conducted by the trial court only covered the first element, awareness of the conflict. The other two elements required by Larzelere—the defendant's knowing that the conflict could affect the defense and knowing of the right to other counsel—were not covered by the trial court's inquiry, nor, the district court found, did they appear to be satisfied by looking elsewhere in the record. See Alexis, 140 So. 3d at 619. The district court reversed Respondent's conviction and remanded for a new trial.

**ARGUMENTS**

The State argues that a waiver of the right to conflict-free counsel is only required when there is an actual conflict of interest and that an attorney's representation of two or more codefendants does not necessarily create an actual conflict of interest. Defense counsel's calling the court's attention to a potential conflict of interest from dual representation, the State argues, did not trigger an obligation to conduct the three-part inquiry discussed in Larzelere, because a Larzelere inquiry and waiver are only required when there is an actual conflict of interest. In the State's view, since the codefendants' respective defenses were compatible rather than conflicting—they both admitted pulling the victim from the car, they both denied being armed, and neither claimed the other was armed—the dual representation did not create a conflict of interest between Respondent and his attorney. If there was no actual conflict of interest, the State maintains, then there

- 7 -

was no need for a waiver of the right to conflict-free counsel. The State argues that the district court misapplied Lee: in Lee there was an actual conflict of interest, and the court failed to conduct an adequate inquiry to ensure that the defendant's waiver of the conflict was a knowing one. The present case, the State argues, is not controlled by Lee because here there was no actual conflict.

Respondent argues that the district court's reversal of his conviction should be upheld because (1) there was a conflict of interest between Respondent and his defense attorney caused by the attorney's divided loyalty in representing two codefendants whose interests were in conflict; and (2) Respondent's purported waiver was not valid because the trial court failed to conduct the proper inquiry to ensure that the waiver was knowing, intelligent, and voluntary. Respondent questions the State's distinction between potential and actual conflicts of interest and argues that once a court is made aware of any possibility of a conflict—such as might arise in a case of dual representation—the court must conduct the full three-part inquiry discussed in Larzelere. Although he consented on the record to dual representation, Respondent argues that this purported waiver was not valid because the trial court failed to conduct the proper inquiry and advise the defendant to ensure that the waiver was knowing and voluntary. Thus Respondent concludes that he was defended by an attorney with a conflict of interest and there was no valid waiver. As in Lee, Respondent argues, there can be no harmless error inquiry

because prejudice from an attorney's conflict of interest is presumed. Respondent relies on Thomas v. State, 785 So. 2d 626 (Fla. 2d DCA 2001), where the Second District Court of Appeal, citing Lee, held that the trial court, having been advised that defense counsel had formerly represented a prosecution witness, erred in failing to obtain "a knowing, intelligent, and voluntary waiver of [the] right to conflict-free counsel." Thomas, 785 So. 2d at 629.

## ANALYSIS

We are presented with the legal issue of whether a waiver—along with the appropriate inquiry to ensure the knowing and voluntary nature of the waiver—was required under the facts of this case. The standard of review for a legal issue is de novo. See, e.g., State v. Blair, 39 So. 3d 1190, 1191-92 (Fla. 2010); Insko v. State, 969 So. 2d 992, 997 (Fla. 2007). The issue of whether there was an actual conflict of interest is a mixed question of law and fact. See Hunter v. State, 817 So. 2d 786, 792 (Fla. 2002). Mixed questions of law and fact require an appellate court to defer to the trial court on factual matters but provide independent review of legal determinations. See State v. Glatzmayer, 789 So. 2d 297, 301 (Fla. 2001); Stephens v. State, 748 So. 2d 1028, 1032 (Fla. 1999).

As stated above, the cases relied on for this Court's discretionary jurisdiction under express and direct conflict of decisions are Dixon, 758 So. 2d 1278, and Gorby, 630 So. 2d 544. In Dixon, the appellant and her codefendant were tried

- 9 -

together and had the same defense attorney.  The trial court itself raised the issue and advised the defendant of the possible conflict of interest.  The court did not conduct a <u>Larzelere</u> three-part inquiry or obtain an express on-the-record waiver from the defendant.  On appeal the defendant claimed her lawyer had a conflict of interest and the court had erred in failing to conduct the three-part inquiry.  The Third District held that because the defendant did not object to the joint representation, to prevail on appeal she had to show that an actual conflict adversely affected the lawyer's performance.  <u>Dixon</u>, 758 So. 2d at 1280.  In the joint representation context, the court said, a conflict of interest exists when one codefendant stands to gain significantly from actions of counsel that harm the interests of the other codefendant.  <u>Id.</u> at 1280-81.  A disparity in the amount of evidence of guilt between two codefendants does not necessarily create a conflict of interest.  <u>Id.</u> at 1281.  The court held:  "Before reaching the issue of waiver . . . it is essential to determine whether an actual conflict existed."  <u>Id.</u> at 1280.  Finding no actual conflict of interest that adversely affected appellant's defense, the court affirmed the conviction.  <u>Id.</u>  The district court decision in the instant case conflicts with <u>Dixon</u> because in <u>Dixon</u>, the court held that it was essential to determine whether there was an actual conflict of interest before reaching the issue of waiver, while in the instant case the court held that a waiver was required without first finding that there was an actual conflict of interest.

- 10 -

In Gorby, the appellant claimed his defense attorney had a conflict of interest because his former law partner had represented a state witness. Defense counsel put the trial court on notice of the possible conflict, but did not move to withdraw. On appeal, we held that to prevail on a claim of violation of the right to conflict-free counsel, a defendant must show that an actual conflict of interest affected counsel's performance, citing Cuyler v. Sullivan, 446 U.S. 335, 350 (1980). Based on counsel's actions as shown in the record, the Court found that Gorby had failed to show an actual conflict affecting counsel's performance. The potential conflict brought to the court's attention by defense counsel did not become an actual conflict. Gorby, 630 So. 2d at 546. As in the instant case, defense counsel brought the issue of a possible conflict to the trial court's attention, but did not object to the representation on the ground of conflict of interest. Finding no actual conflict of interest, we did not hold that an inquiry into the knowing and voluntary nature of any waiver by the defendant was required. The decision under review therefore also conflicts with our decision in Gorby.

Respondent argues that the district court was correct to reverse his conviction because the trial court's failure to conduct the three-part inquiry after the issue of conflict of interest was raised violated his Sixth Amendment right to counsel and such a violation requires automatic reversal without regard to prejudice. As did the district court, Respondent relies heavily on Lee, 690 So. 2d

664, which in turn cited as authority the United States Supreme Court's decisions in Holloway and Glasser.

In Lee, defense counsel, an assistant public defender, disclosed to the trial court that his office had recently defended the State's key witness on a criminal charge; the witness had been the defendant's cellmate and was to testify that the defendant had confessed. The court obtained a waiver from the defendant after explaining to him what a conflict of interest is and what effect it might have on his attorney's ability to cross-examine the witness or use privileged information against him. The defendant waived the conflict of interest, but later attempted to withdraw his waiver, stating he wanted a lawyer who could challenge the witness. Finding that the earlier waiver was knowing, intelligent, and voluntary, the court refused to revisit the issue of conflict and told the defendant he could either continue with the same appointed counsel, hire his own lawyer, or represent himself. Lee, 690 So. 2d at 665-67. On appeal, the First District Court of Appeal found that under the circumstances, the Public Defender's Office having recently represented the State's witness created an actual conflict of interest. The defendant's waiver, however, was obtained without an adequate inquiry into the knowing, intelligent, and voluntary nature of the waiver. The trial court explained what a conflict of interest was and how it might affect the defense, but did not advise the defendant of his right to have other counsel appointed. Thus, the first

- 12 -

and second elements of the <u>Larzelere</u> three-part inquiry were included, but not the third element. Since there was an actual conflict of interest and no valid waiver, the district court reversed the conviction. <u>Lee</u>, 690 So. 2d at 667-69.

In <u>Glasser</u>, the trial court required Glasser's attorney to represent another defendant over Glasser's objection that he wanted his attorney to represent only him. On appeal, Glasser argued that defense counsel's duty to the second defendant prevented him from properly defending Glasser. The record showed that defense counsel was inhibited in his defense of Glasser because of his duty to the other defendant. This was a conflict of interest. The Court reversed Glasser's conviction and remanded for a new trial, holding: "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." <u>Glasser</u>, 315 U.S. at 76.

In <u>Holloway</u>, appointed counsel for three codefendants moved for appointment of separate counsel on the ground that confidential communications he had received from the defendants made a conflict of interest likely. One defendant had made a statement to the police incriminating the others and admitting less serious culpability for himself. At trial, all three defendants denied their guilt, and defense counsel, continuing to object, believed he could not cross-examine or even question them because their interests were in conflict. The Court

observed that permitting a single attorney to represent codefendants does not deny the right to effective counsel per se and it can even be beneficial. Holloway, 435 U.S. at 482. However, when defense counsel objected and argued to the trial court that he believed there was a probability that the interests of the defendants were in conflict, the trial court was obligated to either appoint separate counsel or "take adequate steps to ascertain whether the risk was too remote to warrant separate counsel." Id. at 484. The trial court's failure to take either action deprived the defendants of the right to the assistance of counsel. The Court placed great weight on the role of defense counsel, observing that counsel is in the best position to judge the potential for a conflict of interest and suggesting that when counsel, based on representations made as an officer of the court, seeks appointment of separate counsel on the ground of conflict, it should generally be granted. Id. at 485-86. The Court went on to hold, based on Glasser, that "whenever a trial court improperly requires joint representation over timely objection reversal is automatic." Holloway, 435 U.S. at 488. Prejudice is presumed because the right to the assistance of counsel is essential to the fairness of a trial. Id. at 489-91.

In arguing that the Holloway rule, requiring a court to appoint separate counsel or conduct an inquiry, applies to his case, Respondent equates his attorney's bringing up the issue of joint representation in court to the defendants' clear objections in Glasser and Holloway. However, defense counsel in the instant

- 14 -

case did not object, nor did he claim he could not effectively represent both defendants. He represented to the court that there was no impediment to joint representation. In <u>Cuyler</u>, the Court stated that unless a court knows or should know of a conflict, the Sixth Amendment does not require a state court to initiate inquiry into the issue of a conflict of interest from multiple representation. Multiple representation alone does not violate the Sixth Amendment, and in the absence of an objection, a court can presume there is no conflict of interest. When the defendant does not object, only an actual conflict of interest violates a defendant's Sixth Amendment rights; courts should not presume that a possible conflict will violate the Sixth Amendment. "[T]he possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." <u>Cuyler</u>, 446 U.S. at 350.

Respondent disputes the validity of the distinction the State draws between a possible or potential conflict of interest and an actual conflict of interest. In either event, Respondent argues, if the issue is brought to the court's attention, an inquiry must be conducted, failing which, under the federal Sixth Amendment caselaw, reversal is automatic without any need for a showing of adverse effect on the representation. However, <u>Mickens v. Taylor</u>, 535 U.S. 162 (2002), explains that the presumption of prejudice means that the defendant whose right to the

assistance of counsel has been violated need not show an effect on the outcome. Id. at 166-67. When the claim is that the trial court failed to conduct an inquiry about a potential conflict which it knew or should have known about, the claimant must show that a conflict of interest affected counsel's performance. Id. at 170-72. Showing an effect on counsel's performance is essential to showing an actual conflict of interest; a theoretical conflict is almost always present in cases of multiple representation. Id. at 169-70. The "prejudice" that need not be shown when Sixth Amendment rights are denied is a probability of effect on the outcome sufficient to undermine the reliability of the verdict. Id. at 166. An attorney's active representation of conflicting interests is an "actual" conflict of interest; joint representation of codefendants by itself is at most a possible, potential, or theoretical conflict. Under the United States Supreme Court's caselaw, the distinction drawn by the State is valid, and decisions holding that a conflict of interest violates the right to counsel and is per se reversible apply to actual conflicts, i.e., conflicts that adversely affect counsel's performance.

In Mickens, a state prisoner convicted of murder sought federal habeas corpus relief, claiming his appointed counsel was ineffective because of a conflict of interest. Unknown to the defendant, counsel had previously represented the murder victim. Counsel accepted the appointment to represent the defendant without objection, but the judge was presumptively aware of the prior

- 16 -

representation, having made the prior appointment less than three weeks before appointing counsel to the defendant's case. The petitioner argued that the language of the Court's remand order in Wood v. Georgia, 450 U.S. 261 (1981), directing the trial court to grant a new probation revocation hearing if it found an "actual conflict of interest" without also requiring a finding of adverse effect on counsel's performance, established a principle that a showing of adverse effect was not required. Rejecting this argument, the Court said: "As used in the remand instruction . . . we think 'an actual conflict of interest' meant precisely a conflict that affected counsel's performance—as opposed to a mere theoretical division of loyalties. It was shorthand for the statement in [Cuyler v.] Sullivan that 'a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief.' " Mickens, 535 U.S. at 171 (quoting Cuyler, 446 U.S. at 349-50). Holding that a showing of adverse effect was required and had not been made, the Court upheld the denial of habeas relief. The decision supports the State's position that the phrase "actual conflict of interest" includes the element of adverse effect on the representation. Requiring a criminal defendant to proceed with an attorney with whom the defendant has an actual conflict of interest is a violation of the defendant's right to counsel under the Sixth Amendment. Caselaw holding that such a violation cannot be harmless should be understood to mean that there is no

requirement to show a probable effect on the outcome. Some adverse or detrimental effect on the representation, however, is required in order to establish an actual conflict of interest.

As discussed above, the Lee case held: "When defense counsel makes a pretrial disclosure of a possible conflict of interest with the defendant, the trial court must either conduct an inquiry to determine whether the asserted conflict of interest will impair the defendant's right to the effective assistance of counsel or appoint separate counsel." 690 So. 2d at 667. The phrase "asserted conflict of interest" in the main clause of this sentence must be understood to relate back to the phrase "possible conflict of interest" in the dependent clause. Before deciding that the trial court had erred in failing to ensure a valid waiver, the district court in Lee found there was "an actual conflict of interest." Id. The requirement to "conduct an inquiry" does not necessarily mean there must be a waiver with a full three-part inquiry to determine the knowing and voluntary nature of the waiver. Here, Respondent stated on the record that he agreed to his attorney representing both him and his codefendant. The statement was made in a colloquy during which defense counsel represented to the court that he had discussed the dual representation with his clients. The colloquy between the trial judge and the defendant at the time of this statement did not satisfy the requirements of the Larzelere three-part inquiry. But there was no need for an inquiry into the

- 18 -

knowing, intelligent, and voluntary nature of the waiver because, since there had been no finding of an actual conflict of interest, there was no need for a waiver. The district court of appeal applied the standard for "waiver of conflict-free counsel" to a case where counsel was not shown to have labored under an actual conflict of interest. This was error.

The decision of the district court of appeal is quashed and the case is remanded with directions that Respondent's conviction be affirmed. To the extent that Thomas v. State, 785 So. 2d 626 (Fla. 2d DCA 2001), and Forsett v. State, 790 So. 2d 474 (Fla. 2d DCA 2001), hold that a waiver is required in the absence of a determination that an actual conflict of interest exists, they are inconsistent with our holding and are disapproved to the extent of the inconsistency.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal - Direct Conflict of Decisions

First District - Case No. 1D13-2489

(Leon County)

Pamela Jo Bondi, Attorney General, and Trisha Meggs Pate, Bureau Chief, Criminal Appeals, Tallahassee, Florida,

    for Petitioner

Dane Kristofor Chase of Chase Law Florida, P.A., Saint Petersburg, Florida,

    for Respondent