Filed 12/21/22

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C094949 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF19987081) |
| v. | |
| ISHMAEL MICHAEL CARTER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Yolo County, Daniel M. Wolk, Judge. Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Clara M. Levers, Deputy Attorney General, Julie A. Hokans, Supervising Deputy Attorney General, for Plaintiff and Respondent.

1

After defendant Ishmael Michael Carter was housed for more than 14 years in a state hospital awaiting trial, the trial court found him to be a sexually violent predator and committed him to an indeterminate term. Defendant appeals contending the trial court: (1) abused its discretion in denying his *Marsden*[1] motion; and (2) failed to obtain a valid waiver of defendant's right to a jury trial. We find no error and affirm the judgment.

## BACKGROUND[2]

On May 29, 2007, a petition to commit defendant as a sexually violent predator was filed. On August 1, 2007, the parties submitted on probable cause that defendant met the criteria for commitment and the court ordered defendant transported to Coalinga State Hospital.[3] Defendant waived time for trial for the opportunity to educate himself and receive treatment.

From October 2007 to November 2019, trial setting conferences were continued at the request of one side or the other or both, but mainly by the public defender on behalf of defendant, for various reasons as noted in the court's minute orders. For example, minute orders on September 22, 2008, June 29, 2009, and July 15, 2009, noted the public defender's efforts to obtain defendant's medical records by subpoena and a court order. A minute order on October 7, 2009, stated defendant wanted to secure an expert. A March 21, 2011 minute order noted that defendant was working on his sex offender treatment program. On January 23, 2014, a minute order noted that both parties

---

[1] *People v. Marsden* (1970) 2 Cal.3d 118.

[2] Defendant includes in the opening brief a summary of the evidence presented at trial. We limit our recitation to the factual background pertinent to defendant's contentions, which involve matters determined prior to trial.

[3] Under the Sexually Violent Predator Act (SVPA) (Welf. & Inst. Code, § 6600 et seq.; further undesignated section references are to this code), Coalinga State Hospital is the primary facility for commitment of a person for mental health treatment. (§ 6600.05.)

requested a continuance because the hospital needed to do a further evaluation. On April 30, 2014, the minute order noted, "Def[endant] still in treatment[,] not ready to set trial."

On January 25, 2016, a minute order noted that defendant was continuing treatment at Coalinga State Hospital. On November 8, 2016, trial setting was continued at defendant's request for additional evaluation by an expert witness. A minute order dated November 21, 2017, noted that the judge signed an order for an early evaluation. On April 23, 2018, the minute order noted that the court had not received the new evaluation. On October 22, 2018, the minute order noted that defendant had retained an expert. On April 10, 2019 and May 22, 2019, the minute orders noted that the defense's expert had evaluated defendant. A July 15, 2019 minute order noted a continuance requested by both parties to allow counsel the opportunity to coordinate with doctors (who would presumably testify at trial). An August 12, 2019 minute order noted that the People had requested, and the court order, an additional evaluation. On October 7, 2019, the minute order continuing trial setting noted that defendant was waiting for two reports.

On January 30, 2020, the court set a jury trial for May 11, 2020. Further continuances and delays for other reasons followed leading to a new jury trial date of June 21, 2021. On May 17, 2021, supervising deputy public defender Monica Brushia moved to continue the trial on the ground that she had "inherited" the case and realized she had much to learn. The People did not object, and the court granted the motion. On June 18, 2021, the court set the case for jury trial on September 13, 2021.

On September 13, 2021, defendant waived jury trial. A court trial began on that date. On September 27, 2021, the trial judge ruled that the People had proved beyond a reasonable doubt that defendant was a sexually violent predator. The court ordered defendant committed for an indeterminate term.

Defendant filed a timely notice of appeal.

3

DISCUSSION

I

*Marsden Motion*

A.     *Background*

    1.     *Marsden Motion*

On December 13, 2019, chief deputy public defender Allison Zuvela forwarded defendant's pro. per. *Marsden* motion to the superior court and requested that the matter be put on calendar for a hearing.  In the *Marsden* motion, defendant sought appointment of substitute counsel and to disqualify Zuvela and the public defender's office, claiming that (1) Zuvela was a percipient witness and disqualification was necessary to protect defendant's confidential information and avoid a conflict of interest, and (2) defense counsel was responsible for delays that violated defendant's due process right to a speedy trial.

At the same time, defendant submitted a motion for dismissal under *People v. Superior Court (Vasquez)* (2018) 27 Cal.App.5th 36 and *People v. Litmon* (2008) 162 Cal.App.4th 383 for violation of his right to a speedy trial, noting that he had been at Coalinga State Hospital for 12 years.[4]

On December 19, 2019, the trial court continued the hearing on defendant's motions to January 15, 2020.  The court inquired whether defense counsel wanted both motions heard and Zuvela suggested that the *Marsden* motion be heard first.  Zuvela explained:  "The issue from [defendant's] perspective is that there's a few cases out there

---

[4] In *Vasquez,* the court upheld the trial court's decision to grant the defendant's motion to dismiss an SVPA petition for violation of the defendant's due process right to a speedy trial, after a 17-year delay in bringing the case to trial.  (*People v. Vasquez, supra*, 27 Cal.App.5th at p. 41.)  In *Litmon*, the court reversed the defendant's commitment under the SVPA, determining that the lower court should have granted his motion to dismiss the civil commitment petitions for excessive delay in bringing the case to trial.  (*People v. Litmon, supra*, 162 Cal.App.4th at p. 406.)

4

that says, hey, I've asked for a speedy trial and I haven't gotten my speedy trial. And so [defendant's] asking to dismiss on that, on those grounds. And we can address this at the Marsden hearing, but there was a philosophy and he was waving time so he could get in the best place where he could, so we can have a trial and we've kind of set that in motion."

The court heard the *Marsden* motion on January 15, 2020. When the court asked defendant why he wanted to replace his lawyer, defendant responded: "Well, I've been sitting here for 12 and a half years and there's been multiple delays that was not at my request. [¶] When Ms. Zuvela took over, I informed her of some things going on and she was looking into it, but then we've been -- I just -- I been requesting trials and I'm still sitting here without my trial."

Defendant added, "[I]t's hard getting anything done at the moment. But that's really my main -- you know, my only complaint is really my request for the trial is constant delays, and I'm not aware of a lot of them."

In response to a further question from the court, defendant confirmed that Zuvela had been in touch with him by letter or telephone, and also said, "Usually when I call, a good portion of the time she responded back immediately and there was times she didn't because either she wasn't in the office or she was in another trial."

Defendant said his previous public defender was hard to contact "a lot of times." Many times when the trial or a hearing was delayed, defendant did not hear about it until defendant called in to the public defender's office and was informed of the continuance by a secretary.

When the court inquired if there were any other concerns defendant had about Zuvela representing him, defendant responded, "That was the main one, about the constant delays, and my speedy trial is not being adhered to or things likes [*sic*] that, but that's the biggest complaint I've had, is the delays."

5

When the court asked defendant if Zuvela had explained the reason for the delays, defendant said, "The last time I knew why evaluators didn't come up until after the trial date. And there was other things going on with communication between her and the [district attorney's office], but there was some things going on and there was times after that that she was in trials. But the specific delay in that particular trial was due to the evaluators not coming up here."[5]

Asked by the court if Zuvela had done things she should not have done, defendant first said, "a lot of times they got her in trial, so it's hard to catch her at those times." Then, responding to the court's question whether there were other things Zuvela should be doing but had not done yet, defendant said: "No. Every time I requested something she's actually pushed to get it done if she could. If there's some kind of delay, when she had the opportunity she notified me and let me know either by letter or she's called me."

The court then asked Zuvela for comments. Zuvela said that when she inherited the case, she understood that defendant was to do as much sex offender treatment as possible to be in a good position for trial, but it was hard to complete treatment because the hospital kept changing the program. In November 2017, defendant said he was ready for and requested trial, but the district attorney wanted a reevaluation by two doctors and it took a year to get their reports. Zuvela then obtained an expert witness who saw defendant, and on June 5, 2019, provided a report stating defendant did not meet the criteria for a sexually violent predator. Zuvela gave the report to the district attorney and indicated that defendant was ready to set a trial date. The district attorney then wanted a

---

[5] Evaluators are practicing psychiatrists or psychologists who evaluate a person to determine whether he or she is a sexually violent predator. (§ 6601, subd. (d); *People v. Orey* (2021) 63 Cal.App.5th 529, 538 (*Orey*).) A petition for commitment requires the concurrence of two evaluators that a person "has a diagnosed mental disorder so that the person is likely to engage in acts of sexual violence without appropriate treatment and custody . . . ." (§ 6601, subd. (d).) A district attorney petitioning for commitment may request updated evaluations to present the case for commitment. (§ 6603, subd. (d)(1).)

follow-up evaluation. Zuvela did not get the final reports until January 2020, whereupon she again said defendant was ready to set a trial date. Zuvela added that she talked to defendant once or twice a month, went to visit him five months prior, wrote to him frequently, and sent him stamps to respond.

Zuvela concluded, "I think we've been moving forward. I understand that it's frustrating for [defendant], but I think we're in a good position to go to trial. Now it's just getting all the experts in at the same time."

The court also inquired about defendant's claim that Zuvela was a witness, which defendant clarified he was referring to her awareness of delays involving completing sex offender treatment at the hospital.[6] Defendant again faulted Zuvela's predecessor but said, when Zuvela "took over the case and I started giving her information that she needed concerning what is going on here and what I've done, and she's been getting this information and trying to push for -- it seems like there's more roadblocks coming from this hospital than anything and it's frustrating. [¶] So I give her credit when I did give her information she needed I -- she went after it. It's getting the hospital to conform to what the law says which is the problem."

The court denied defendant's *Marsden* motion, explaining: "I understand your frustration of your own case moving or not moving and the frustration in the case getting to trial. [¶] From what Ms. Zuvela has told us today, I'm satisfied that she's been diligent trying to push the case forward. She hasn't necessarily delayed the process. She's promptly communicated with you and described what happened. From my vantage point she has done her job as your lawyer. It doesn't mean in a perfect world this couldn't have happened sooner, but many of the reasons of why it's so slow is not because of what she did or didn't do, it's because of what other people did or didn't do."

---

[6] In ruling on the motion, the court observed that whatever Zuvela had witnessed was hearsay, about which she would not be allowed to testify.

## 2. *Motion to Dismiss*

Turning to defendant's motion to dismiss, the court asked Zuvela if she had discussed it with defendant. Zuvela confirmed that she had and defendant was frustrated that the process had gone forward but he had not had a trial. Zuvela explained that, to have defendant's motion granted, Zuvela would have to say that she was not fulfilling her ethical duty to pursue trial in a timely manner. Zuvela said: "I don't think I've breached my ethical duties and I think I've been trying to fight for speedy trial." Given that the trial court ruled on the *Marsden* motion that "I have done what I need to do," Zuvela stated she could not ethically pursue the motion to dismiss.

The court then addressed defendant: "Based on what Ms. Zuvela has said, you could still pursue this motion, but I don't think she can represent you and advocate for it. So you would be representing yourself and I would give the [district attorney] an opportunity to respond." Asked by the court if he wanted to pursue the motion representing himself, defendant said, "I can't represent myself to that extent. I just -- I'm aware of the ethical portion on her. Like I said, she's done what she could, but it was just the continual delay that Vasquez wanted because the fact was he was sitting here for 17 years and never given the trial he requested, and they didn't just put it on his attorney, but they put it also on the [district attorney's] office for the delay and because they said -- and I'm just paraphrasing, 'They should have known within two years if he met the criteria or not.' "

After further argument, the court concluded: "If you want to pursue that -- and you may have to do it on your own because it sounds like your attorney's position is since she is still your attorney and she would have to say she didn't do her job right and she doesn't believe that's true, she can't argue on behalf of you on this motion because at least it in part requires her to say she didn't do her job right."

The court said, as the trial was few months away, defendant could pursue the motion, but he needed to file a declaration in support of the motion. Defendant

8

responded, "It's just I have to have help in doing that stuff because I'm not really versed in the law, but I understand common sense and I understand how the law plays things and things, but as far as using the language of the law, I'm not really versed in that, so . . . ." The court repeated that if defendant wanted to pursue the motion, "you need to file a declaration and you'll send that to your attorney or to the [c]ourt and then we'll bring it up again."

Defendant did not pursue a motion to dismiss further.

B.     *Analysis*

"An indigent person subject to a commitment petition under the SVPA has a statutory right to the appointment of counsel.  (§ 6603, subd. (a).)  Although the Sixth Amendment right to counsel does not apply to such civil commitment proceedings, a defendant has a due process right to the effective assistance of counsel, and thus the right to make *Marsden* motions to discharge his or her appointed counsel.  [Citation.]  [¶]  ' "A defendant is entitled to have appointed counsel discharged upon a showing that counsel is not providing adequate representation or that counsel and defendant have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." '  [Citation.]  We review the trial court's denial of defendant's *Marsden* motion under the abuse of discretion standard.  [Citation.]  Denial of a *Marsden* motion is not abuse of discretion unless the defendant has shown that a failure to replace the appointed attorney would substantially impair the defendant's right to assistance of counsel.  [Citation.]"  (*Orey, supra,* 63 Cal.App.5th at pp. 567-568.)

Defendant argues that the trial court should have granted his *Marsden* motion and replaced Zuvela when she "stated on the record that she was not pursuing a motion that appeared on its face to potentially have merit because she would have to argue her own incompetence."  Defendant mischaracterizes what happened at the *Marsden* hearing.  At the time Zuvela explained that she could not represent defendant regarding his pro. per. motion to dismiss, the court had already denied the *Marsden* motion.  During the hearing

9

on the *Marsden* motion, when defendant said his "main" and "only complaint" was delay in bringing his case to trial, Zuvela not only set forth her diligent efforts to push for trial after defendant requested it in November 2017, but defendant also agreed that Zuvela had been diligent and "[e]very time I requested something she's actually pushed to get it done if she could." When defendant detailed some of the specific reasons for the delay, the trial court correctly perceived that the delay was not attributable to Zuvela but others, including the district attorney's office. To be sure, defendant was critical of Zuvela's predecessor, but to the extent defendant wanted a public defender who would push harder for trial, defendant got what he wanted in replacement of the prior attorney with Zuvela. In short, defendant presented the trial court with no grounds to grant a *Marsden* motion and the court did not abuse its discretion in denying it.

Defendant's motion to dismiss was functionally a *Marsden* motion or a quasi-*Marsden* motion, because it created a conflict between the public defender, who did not believe she and the public defender's office had failed to diligently pursue a timely trial on his behalf, and defendant, who maintained he had been denied a speedy trial while represented by the public defender's office. To pursue a motion to dismiss would require substitute counsel and therefore was tantamount to a *Marsden* motion.

We do not, however, endorse the trial court's invitation to defendant to represent himself while the public defender's office continued to represent him. The general rule is that a defendant who is represented by an attorney of record will not be personally recognized by the court in the conduct of his case. (*People v. Weisner* (2022) 77 Cal.App.5th 1072, 1077, review granted July 13, 2002, S274617; *People v. Merkouris* (1956) 46 Cal.2d 540, 554 [" 'It is settled that the attorney of record has the exclusive right to appear in court for his client and to control the court proceedings, *so that neither the party himself* [citations], nor another attorney [citations], can be recognized by the court in the conduct or disposition of the case' "].) "Motions and briefs of parties represented by counsel must be filed by such counsel." (*People v. Clark* (1992) 3 Cal.4th

10

41, 173, disapproved on other grounds in *People v. Edwards* (2013) 57 Cal.4th 658, 704-705.)  A court "will accept and consider pro se motions regarding representation, including requests for new counsel.  [Citation.]  Such motions must be clearly labeled as such, and must be limited to matters concerning representation." (*Clark,* at p. 173.)  "Any pro se documents by represented parties not clearly coming within this exception will be returned unfiled." (*Ibid.*)

"Although a trial court retains discretion to allow a represented defendant's personal participation, such an arrangement ought to be avoided unless the court is convinced, upon a substantial showing, that it will promote justice and judicial efficiency in the particular case." (*In re Barnett* (2003) 31 Cal.4th 466, 472.)  We find no such showing in the record.  To the contrary, defendant's comment that he needed help to pursue the motion to dismiss because he was "not really versed in the law" indicated that he did not desire to exercise his constitutional right to represent himself.  (See *People v. Windham* (1977) 19 Cal.3d 121, 128 ["when a motion to proceed pro se is timely interposed, a trial court must permit a defendant to represent himself upon ascertaining that he has voluntarily and intelligently elected to do so, irrespective of how unwise such a choice might appear to be"]; *Faretta v. California* (1975) 422 U.S. 806, 836.)

Viewing the motion to dismiss as a *Marsden* motion—which defendant clearly does on appeal—made on the ground that defense counsel refused to pursue a motion to dismiss, defendant's contention that Zuvela should have been replaced is the equivalent of the defendant's argument in *Orey* that the trial court erred in denying his *Marsden* motions claiming defense counsel wrongly refused to file a motion to dismiss for violation of his right to a speedy trial under *Vasquez* and *Litmon*.  (*Orey, supra,* 63 Cal.App.5th at pp. 564-567.)  Indeed, in one of the *Marsden* motions described in *Orey*, the defendant similarly "claimed that [counsel] had told him she would not file a *Vasquez* motion because 'that would require her to indicate that her coworkers didn't do their job and she couldn't do that . . . .' " (*Id.* at p. 566.)

In *Orey,* the appellate court held that the trial court did not abuse its discretion in denying defendant's *Marsden* motion. The court reasoned that the decision not to file the *Vasquez/Litmon* motion "was essentially a tactical decision, and '[t]actical disagreements between the defendant and his attorney do not by themselves constitute an "irreconcilable conflict." ' [Citation.] 'A defendant does not have the right to present a defense of his own choosing, but merely the right to an adequate and competent defense.' " (*Orey, supra,* 63 Cal.App.5th at pp. 568-569.) "[W]hen a defendant exercises his or her constitutional right to representation by professional counsel, it is counsel who 'is in charge of the case' and the defendant 'surrenders all but a handful of "fundamental" personal rights to counsel's complete control of defense strategies and tactics.' " (*In re Barnett, supra,* 31 Cal.4th at p. 472; *Orey,* at p. 569 ["counsel is 'captain of the ship' and can make all but a few fundamental decisions for the defendant"].)

Here, the tactical decision was for defendant to complete sex offender treatment at Coalinga State Hospital before requesting trial, as reflected in the record. A minute order on August 1, 2007, stated that defendant "waives time for [t]rial for opportunity to educate himself & [r]ec[eive] <u>treatment</u>," another on March 21, 2011, noted that defendant was "working on his program preparation," an April 30, 2014 minute order continuing trial setting noted that defendant was "still in treatment [and] not ready to set trial," and on January 25, 2016, the order noted that defendant "continues [with] treatment @ State Hospital." When Zuvela referred to this tactical decision at the *Marsden* hearing, defendant did not dispute it. Defendant, like Zuvela, attributed delays in completing treatment to the hospital, not the public defender assigned to his case or the public defender's office. When defendant finally requested trial in November 2017, telling Zuvela, "Okay, I'm ready. I have it together, and I want my trial," defendant confirmed that Zuvela had "done what she could" to move the case forward to trial.

We also note that defendant did not file a *Marsden* motion until after the publication of *Vasquez* in October 2018, in combination with a motion to dismiss under

12

that case.  Defendant's behavior reflects a belief held by many in the state hospital that creating a conflict with the assigned attorney might aid in dismissal of the case.  By filing a *Marsden* motion with a motion to dismiss, defendant attempted to create a conflict of interest by disagreeing with the tactic that the record indicates he had previously assented to.  Thus, the trial court had discretion to deny defendant's *Marsden* motion as an impermissible attempt to manufacture a conflict of interest.  (*Orey, supra*, 63 Cal.App.5th at p. 570; *People v. Smith* (1993) 6 Cal.4th 684, 696-697 ["a defendant may not force the substitution of counsel by his own conduct that manufactures a conflict"].)

On appeal, defendant proposes that this court "conditionally" reverse the trial court's denial of his *Marsden* motion and remand with directions "(1) to appoint new counsel to represent appellant; and (2) new counsel to file a *Vasquez* motion if appropriate."  In a similar vein, defendant argues that the proper remedy in this instance would have been for the trial court to "appoint[] a new attorney for appellant for all purposes or possibly appoint[] counsel solely to file a *Vasquez* motion if appropriate."  Defendant explains that he "is not arguing his defense attorney was generally ineffective and not communicative and therefore needed to be replaced because of overall inadequate representation.  Appellant's claim focuses on the defense counsel's failure to file a specific motion."

As the People point out, the cases defendant cites in support involved the trial court's failure to hold a *Marsden* hearing and the appellate court's conditional reversal with an instruction to the trial court to hold the hearing, in order to afford the defendant an opportunity to demonstrate ineffective assistance of counsel or irreconcilable conflict.  (See, e.g., *People v. Armijo* (2017) 10 Cal.App.5th 1171, 1183-1184.)  Defendant does not dispute that, here, the trial court did conduct a sufficient *Marsden* hearing.

In any event, in *People v. Sanchez* (2011) 53 Cal.4th 80, the court rejected a procedure where a second attorney is appointed to investigate whether to file a motion that would implicate the competence of the first attorney.  In that case, the defendant pled

13

guilty and then at sentencing his counsel told the trial court defendant wanted to explore withdrawing the plea. (*Id.* at p. 85.) The court appointed " 'conflict counsel for the sole purpose of looking into the motion to withdraw his plea.' " (*Ibid.*) The California Supreme Court held that "if the defendant makes a showing during a *Marsden* hearing that his right to counsel has been ' " 'substantially impaired' " ' [citation], substitute counsel must be appointed as attorney of record for all purposes." (*Id.* at p. 90.) The court "specifically disapprove[d] of the procedure adopted by the trial court in this case, namely, the appointment of a substitute or 'conflict' attorney solely to evaluate whether a criminal defendant has a legal ground on which to move to withdraw the plea on the basis of the current counsel's incompetence." (*Ibid.*; see also *People v. Smith, supra*, 6 Cal.4th at p. 695 ["When a *Marsden* motion is granted, new counsel is substituted for all purposes in place of the original attorney, who is then relieved of further representation. If the *Marsden* motion is denied, at whatever stage of the proceeding, the defendant is not entitled to another attorney who would act in effect as a watchdog over the first"].) *Sanchez* concluded the trial court erred in part "by appointing substitute counsel for the limited purpose of evaluating defendant's reasons for wanting to withdraw his plea rather than appointing substitute counsel for all purposes." (*Sanchez,* at p. 92.)

Here, defendant's request for remand to appoint new counsel specifically to investigate and potentially file a motion to dismiss is a variation of the procedure disapproved of in *Sanchez*. Defendant declares that he does not claim that defense counsel "needed to be replaced because of overall inadequate representation," tacitly conceding that defendant failed to show at the *Marsden* hearing that his current counsel, Zuvela, had been ineffective. Defendant maintains he only wants new counsel to evaluate and potentially file a motion to dismiss that posed a conflict for his current counsel. However, substitute counsel may only be appointed for all purposes on a showing at a *Marsden* hearing that the defendant's right to counsel has been substantially impaired. We have concluded that defense counsel's tactical decision to have defendant

14

complete sex offender treatment before trial—which the record suggests defendant agreed to for at least the first nine years of his commitment to Coalinga State Hospital—was not a basis to grant a *Marsden* motion.  Defendant may not obtain what he failed to achieve at the *Marsden* hearing by narrowing the request to appointment of new counsel solely to evaluate and potentially pursue a specific motion.

We conclude the trial court did not abuse its discretion in denying defendant's *Marsden* motion.

Our dissenting colleague maintains the 12-year delay in bringing this case to trial was presumptively prejudicial under *Vasquez* and *Litmon* (dis. opn., *post*, at pp. 12, 13), even though defendant did not dispute that he waited until November 2017 to tell Zuvela he was ready and wanted a trial, i.e., more than 10 years after his commitment in August 2007.  Zuvela also explained that reason for the delay was tactical:  that defendant would do as much sex offender treatment as possible to be in a good position for trial.  Thus, this case is a variation of *Orey*, where a decision not to bring a motion to dismiss was tactical and not a basis for substitution of counsel.

Nonetheless, the dissent argues appointment of a second attorney is required solely to determine the merits of a motion to dismiss made on the ground that defendant was denied a timely trial by his current counsel's lack of diligence.  (Dis. opn., *post*, at p. 13.) The dissent relies on the recent California Supreme Court decision wherein the defendant handwrote a note complaining his counsel was ineffective, which the trial court construed as a motion for a new trial, and appointed the alternate public defender's office to assess any ineffective assistance of counsel issues (dis. opn., *post*, at pp. 17-18).  (*People v. Parker* (2022) 13 Cal.5th 1, 84.)  When defendant claimed on appeal this procedure violated *Sanchez*, the court said that case was factually distinguishable because in *Parker* "there was no request to substitute counsel" and the defendant "submitted a handwritten note in which he merely asserted ineffective assistance as a basis for a new trial, and there was no showing that defendant's right to counsel had been substantially impaired."

15

(*Id.* at p. 86.)  The court further observed that the "defendant did not move under *Marsden* for substitution of counsel . . . . (*Ibid.*)  Here, however, defendant did seek substitution of counsel in a *Marsden* motion brought in tandem with a motion to dismiss, and both motions rested on the same ground that defendant was denied the right to a speedy trial by his counsel's lack of diligence.  Indeed, Zuvela explained to the trial court that this issue was at the heart of both motions and suggested that it could be addressed and resolved in hearing the *Marsden* motion first (though that is not what the trial court elected to do).  Thus, *Parker* is factually distinguishable.

The problem with the strategy the dissent advocates is that defendant would be simultaneously represented by two lawyers, one of whom is against the other.  If the rule is a defendant may be entitled to a new lawyer for a limited purpose even though, as here, his *Marsden* motion has been denied, then every defendant who loses a *Marsden* motion nonetheless gets new counsel to investigate and potentially pursue a motion that his or her current lawyer could not or would not, because counsel's effectiveness is implicated.  The result can be the roundelay that *Smith* condemned:  "The spectacle of a series of attorneys appointed at public expense whose sole job, or at least a major portion of whose job, is to claim the previous attorney was, or previous attorneys were, incompetent discredits the legal profession and judicial system, often with little benefit in protecting a defendant's legitimate interests."  (*Smith, supra,* 6 Cal.4th at p. 695.)  As mentioned, the court further said:  "When a *Marsden* motion is granted, new counsel is substituted for all purposes in place of the original attorney, who is then relieved of further representation. If the *Marsden* motion is denied, at whatever stage of the proceeding, the defendant is not entitled to another attorney who would act in effect as a watchdog over the first."  (*Ibid.*)

As outlined in *Smith*, the better approach to the present situation is to resolve the matter under the *Marsden* standard.  (*Smith, supra*, 6 Cal.4th at p. 696.)  "When a defendant satisfies the trial court that adequate grounds exist, substitute counsel should be appointed.  Substitute counsel could then investigate a possible motion to withdraw the

16

plea or a motion for new trial [or in this case, a motion to dismiss] based upon alleged ineffective assistance of counsel.  Whether, after such appointment, any particular motion should actually be made will, of course, be determined by the new attorney."  (*Ibid*.)

II

*Jury Trial Waiver*

Defendant argues that he is entitled to the same advisements required for a criminal defendant to validly waive his right to a jury trial and the trial court did not sufficiently advise him under that standard.  Alternatively, defendant contends that we should remand the case to the trial court to hold an equal protection hearing.

We need not determine whether defendant was entitled under due process and equal protection principles to the same advisements given to defendants in criminal proceedings because defendant was given adequate advisements under that standard. Even if defendant were entitled to heightened advisements, he cannot show prejudice due to the absence of such advisements.

A.    *Background*

At the commencement of trial, the judge inquired, and the parties confirmed, that neither party would be requesting a jury trial.  However, subsequently, the prosecutor advised the court that "before we go too far with the waiver of the jury trial, I do believe that [the] [c]ourt needs to inquire [with] [defendant] himself to get a personal waiver about the fact that he's entitled to a trial by a jury of 12 people with a unanimous verdict, and that Ms. Brushia has explained everything to him, and that he is personally giving up that right."

The following colloquy ensued between the trial court and defendant:

"THE COURT:  Okay.  Mr. Carter, you understand that this may be tried by a jury of your peers of 12 persons to a verdict.  You understand that you have that right, correct?

"THE DEFENDANT:  Yes.

17

"THE COURT:  Have you discussed that with your attorney, Ms. Brushia?

"THE DEFENDANT:  Yes.

"THE COURT:  Are you -- you also may waive that right in order to have that before this Court sitting alone pursuant to the Welfare and Institutions Code; do you understand that?

"THE DEFENDANT:  Yes.

"THE COURT:  And I assume you discussed that with Ms. Brushia, as well?

"THE DEFENDANT:  Yeah.

"THE COURT:  And you understand that despite the right to a jury trial in this matter you are waiving that right and having that trial before me sitting alone, correct?

"THE DEFENDANT:  Yes.

"THE COURT:  Okay, Ms. Brushia, any comments?

"MS. BRUSHIA:  No, your Honor.

"THE COURT:  Okay.  Thank you, [district attorney].

"[DISTRICT ATTORNEY]:  Thank you."

B.     *Analysis*

Under the SVPA, "[a]n alleged [sexually violent predator] is entitled to a jury trial, but only upon a demand by the alleged [sexually violent predator] or his or her attorney. Section 6603, subdivision (a), provides, 'A person subject to this article is entitled to a trial by jury . . . .'  Subdivision (b), in turn, provides, 'The attorney petitioning for commitment under this article has the right to demand that the trial be before a jury.' Further, '[i]f the person subject to this article or the petitioning attorney does not demand a jury trial, the trial shall be before the court without a jury.'  (*Id.*, subd. (f).)"  (*People v. Washington* (2021) 72 Cal.App.5th 453, 462.)

In *People v. Sivongxxay* (2017) 3 Cal.5th 151 (*Sivongxxay*), the California Supreme Court addressed the adequacy of jury trial waiver advisements in criminal proceedings.  In *Sivongxxay*, the court "offer[ed] some general guidance to help ensure

18

that a defendant's jury trial waiver is knowing and intelligent, and to facilitate the resolution of a challenge to a jury waiver on appeal." (*Id.* at p. 169.) Our high court "recommend[ed] that trial courts advise a defendant of the basic mechanics of a jury trial in a waiver colloquy, including but not necessarily limited to the facts that (1) a jury is made up of 12 members of the community; (2) a defendant through his or her counsel may participate in jury selection; (3) all 12 jurors must unanimously agree in order to render a verdict; and (4) if a defendant waives the right to a jury trial, a judge alone will decide his or her guilt or innocence." (*Ibid.*) The court "also recommend[ed] that the trial judge take additional steps as appropriate to ensure, on the record, that the defendant comprehends what the jury trial right entails. A trial judge may do so in any number of ways—among them, by asking whether the defendant had an adequate opportunity to discuss the decision with his or her attorney, by asking whether counsel explained to the defendant the fundamental differences between a jury trial and a bench trial, or by asking the defendant directly if he or she understands or has any questions about the right being waived." (*Id.* at pp. 169-170.)

Failure to follow the court's guidelines in *Sivongxxay* does not necessarily result in the absence of a knowing and intelligent waiver of a defendant's right to a jury trial. The court "emphasize[d] that our guidance is not intended to limit trial courts to a narrow or rigid colloquy." (*Sivongxxay, supra*, 3 Cal.5th at p. 170.) "Our precedent has not mandated any specific method for determining whether a defendant has made a knowing and intelligent waiver of a jury trial in favor of a bench trial. We instead examine the totality of the circumstances." (*Id.* at p. 167.) "[A] trial court's adaptation of or departure from the recommended colloquy in an individual case will not necessarily render an ensuing jury waiver invalid. . . . Reviewing courts must continue to consider all relevant circumstances in determining whether a jury trial waiver was knowing, intelligent, and voluntary." (*Id.* at p. 170, fn. omitted.) "[U]ltimately, a ' "defendant's rights are not protected only by adhering to a predetermined ritualistic form of making

19

the record.  Matters of reality, and not mere ritual, should be controlling." ' "  (*Ibid.*)

We conclude the trial court's advisements were sufficient under the standard applicable to criminal defendants.  To begin with, the trial court did not require defendant or his counsel to demand a trial, thus affording defendant rights beyond those set forth in the SVPA.  (See § 6603, subds. (a), (b) & (f).)  Instead, the trial court took an express waiver of the right to a jury trial from defendant.

Defendant argues the waiver was defective because the trial court did not inform defendant that he had a right to take part in jury selection and the jury's verdict must be unanimous.  Defendant acknowledges that the prosecutor stated that the jury verdict must be unanimous but contends there was no indication in the record that defendant gave a sign that he heard and understood this statement.  Defendant also asserts that the court was required to inform defendant that a true finding would result in an indeterminate commitment.  While defendant acknowledged that he had discussed jury trial waiver with his attorney, he argues on appeal that, given that the record is silent regarding the contents and length of the conversation, there is no assurance defendant validly waived jury trial under *Sivongxxay* standards.

We reiterate that *Sivongxxay* guidelines are not mandatory.  (*Sivongxxay, supra*, 3 Cal.5th at pp. 167, 170.)  Rather, we uphold a jury waiver as valid, " 'if the record affirmatively shows that it is voluntary and intelligent under the totality of the circumstances.' "  (*People v. Collins* (2001) 26 Cal.4th 297, 310; see also *Sivongxxay,* at p. 167.)  Under the totality of the circumstances, we conclude defendant's jury trial waiver was knowing and intelligent.

We note that the trial court did inform defendant that the trial would be before the judge alone and not a jury of 12 persons.  We disagree that the prosecutor's comment that the verdict must be unanimous was somehow not communicated to defendant.  Simply because defendant did not say something in response does not mean he did not hear and understand that a jury verdict must be unanimous.  Accordingly, it was adequately

20

conveyed to defendant that, in a jury trial, if one juror disagreed, the petition for civil commitment would not be granted. Moreover, defendant was to be present during the trial if tried to a jury, which implied that he would have had the opportunity to consult with counsel on the topic of juror selection.

To be sure, we do not know the specifics of defendant's conversation with his attorney regarding the differences between a jury trial and a bench trial. However, as reflected in the reporter's transcript, the judge had been told by the parties that neither side was requesting a jury trial. The record thus indicates that leading up to trial, defendant and his attorney discussed the pros and cons of a jury trial versus a bench trial. Defendant decided in favor of a bench trial, and defense counsel conveyed that decision to the prosecutor before the trial started. Moreover, the fact that defendant wanted a speedy trial, in the hope that the resulting decision would lead to his release sooner rather than later, suggests that defendant was in favor of a trial with one trier of fact over the delays associated with trial by 12 jurors.

Lastly, defendant had prior experience with the justice system when charged and convicted of his qualifying offense. Defendant pled no contest to a 1998 charge of lewd and lascivious conduct with a child under 14. (Pen. Code, § 288, subd. (a).) The form minute order regarding the plea included a checked box labeled, "Defendant waives Constitutional Rights." While the plea agreement is not in the record, it typically enumerates among these rights a trial by a jury of defendant's peers. (See *People v. Gandy* (2017) 13 Cal.App.5th 1288, 1292.) Thus, as part of his experience with criminal procedure, defendant had waived the right to a jury trial and was familiar with the rights associated with jury trials relinquished by waiver. The court in *Sivongxxay* found such prior experience significant when determining that the defendant voluntarily and intelligently waived his right to a jury trial. (*Sivongxxay, supra*, 3 Cal.5th at p. 167.) This fact is just as significant here.

As in *Sivongxxay*, we conclude that "[v]iewed holistically, the circumstances surrounding defendant's jury waiver demonstrate that it was knowing and intelligent." (*Sivongxxay, supra*, 3 Cal.5th at p. 168.)

Because we conclude defendant was afforded the same procedure owed to criminal defendants when waiving their right to a jury trial, we need not consider whether defendant was entitled to such procedure under principles of due process and equal protection.  (See *People v. Cortez* (1992) 6 Cal.App.4th 1202, 1212 [" '[o]ne who seeks to raise a constitutional question must show that his rights are affected injuriously by the law which he attacks and that he is actually aggrieved by its operation' "].)

DISPOSITION

The judgment is affirmed.


_____/s/_____<br>
BOULWARE EURIE, J.

I concur:



_____/s/_____<br>
HULL, J.

ROBIE, A.P.J., Concurring and Dissenting.

Defendant Ishmael Michael Carter raises three issues on appeal to challenge the trial court's finding that he is a sexually violent predator (SVP) within the meaning of the Sexually Violent Predator Act (Act) (Welf. & Inst. Code,[1] § 6600 et seq.). He asserts the judgment should be reversed because the trial court erred in denying his *Marsden*[2] motion to appoint substitute counsel; alternatively, the judgment should be conditionally reversed and the matter remanded for newly appointed counsel to investigate whether a motion to dismiss should have been filed (and to file such motion if appropriate); and, finally, the trial court failed to obtain a valid waiver of his right to a jury trial.

I concur in the majority's conclusions that defendant validly and intelligently waived his right to a jury trial and the trial court did not err in denying his *Marsden* motion to relieve his appointed counsel, Chief Deputy Public Defender Allison Zuvela, for all purposes. I dissent, however, to the majority's conclusion that defendant's requested motion to dismiss for violation of his right to a timely trial was functionally the equivalent of a *Marsden* motion or a quasi-*Marsden* motion. *Orey* certainly does not stand for that proposition,[3] and by treating the motion to dismiss as a *Marsden* motion, the majority fails to account for the important distinctions between the analytical frameworks and remedies associated with the two different motions. (Citing *People v. Orey* (2021) 63 Cal.App.5th 529 (*Orey*).) More importantly, the majority endorses the trial court's *Wood* error. (*Wood v. Georgia* (1981) 450 U.S. 261.) The timely trial right analysis was triggered by the presumptively prejudicial delay of over 12 years in bringing

---

[1]   Undesignated section references are to the Welfare and Institutions Code.

[2]   *People v. Marsden* (1970) 2 Cal.3d 118.

[3]   As explained *post*, *Orey* merely held that a defendant cannot use his, her, or their counsel's decision not to file a motion to dismiss to manufacture a conflict of interest for the purpose of seeking substitute counsel under a *Marsden* motion.

1

defendant to trial.  (*People v. Superior Court (Vasquez)* (2018) 27 Cal.App.5th 36, 61 (*Vasquez*).)  The trial court violated defendant's statutory right to counsel under section 6603, subdivision (a) when it left defendant unrepresented as to the motion to dismiss, even though he was otherwise represented by appointed counsel.

The judgment should be conditionally reversed with directions for defense counsel to investigate and decide whether a motion to dismiss for violation of defendant's right to a timely trial has merit.  If counsel finds the motion has no merit or if a motion is filed but the trial court denies it, the judgment should be reinstated.  If, however, the motion to dismiss is filed and the trial court grants it, the commitment petition should be dismissed.  (See *Vasquez*, *supra*, 27 Cal.App.5th at pp. 82-83 [proper remedy for violation of a defendant's due process right to a timely trial is dismissal of the petition].)  Alternatively, if defense counsel finds merit in the motion to dismiss but declines to pursue it because of a conflict of interest, separate counsel should be appointed to represent defendant.

I

PERTINENT FACTUAL BACKGROUND

Defendant was housed in a state hospital awaiting trial on his SVP commitment petition when he forwarded a *Marsden* motion and motion to dismiss to his counsel, Zuvela.  Zuvela, in turn, forwarded the motions to the trial court and requested a hearing on the *Marsden* motion.

During the *Marsden* hearing, defendant said he wanted to replace his attorney because he had "been sitting [t]here for 12 and a half years and there[ had] been multiple delays that [were] not at [his] request."  He explained, although Zuvela was responsive, his prior attorney was difficult to reach and failed to inform him of delays with respect to trial or hearings.  He further complained about "continual delays" at Coalinga State Hospital (Coalinga) and said, "It's getting the hospital to conform to what the law says [that] is the problem."

2

Zuvela told the trial court she "inherited" the case from another attorney and understood from that attorney that he wanted defendant to do as much of the sex offender treatment program as possible. Zuvela explained, however, "One of the issues and problems with what is going on in Coalinga is they keep on [changing] the program so they can't finish the program." Zuvela expressed: "Coalinga . . . is extremely frustrating and [as defendant] told the Court they keep changing the [sexual offender] treatment. It's my opinion it's so no one can ever graduate, but that's my opinion." She further explained it took a year for the two doctors retained by the district attorney's office to reevaluate defendant after defendant requested a trial in November 2017, and she thereafter sought an evaluation from another doctor and had received his report shortly after June 5, 2019. Zuvela provided her doctor's report to the district attorney, who responded that the district attorney's two doctors had to do a follow-up evaluation. Coalinga provided the final evaluation reports to the district attorney's office on January 6, 2020, and Zuvela received the reports the following Thursday. Zuvela further complained about not being able to access the district attorney's office's recorded evaluations and needing to send a subpoena duces tecum to obtain accessible versions.

The trial court denied the *Marsden* motion stating, in part, Zuvela had "done her job" and "been diligent trying to push the case forward," and "many of the reasons of why [the process had been] so slow [were] not because of what she did or didn't do, it's because of what other people did or didn't do."

The trial court next addressed defendant's draft motion to dismiss, asking Zuvela if she had discussed with defendant whether she would pursue the motion. The motion to dismiss discussion was held during the same closed hearing as the *Marsden* motion. Zuvela responded: "Yes. I mean, basically he's saying he's frustrated because the process has gone forward and he hasn't had his trial, and so I would have to say that I am not living up to my ethical duties to pursue this for trial, . . . in order to have that . . . be granted. [¶] So in essence, the first step was a *Marsden* hearing. I don't think I've

3

breached my ethical duties and I think I've been trying to fight for [a] speedy trial. [¶] But *Vasquez* is the case where he said he wanted a speedy trial and he didn't get the speedy trial and [the] case [wa]s dismissed and Mr. Vasquez was released from Coalinga . . . on those grounds because his lawyer didn't push for a trial in a timely manner and his lawyer did not meet their [*sic*] ethical duties. [¶] So in my mind, if the Court did not grant the *Marsden* motion, and [found] that I have done what I need to do, I don't think I can ethically pursue that. [¶] I'm not removing myself from the case. And, in fact, for Mr. Carter's benefit, I think I'm in the best position if we go to trial to fight for Mr. Carter and I want to do that." (Italics added.)

The trial court acknowledged it "didn't thoroughly brief or review" the motion to dismiss and then told defendant: "Based on what Ms. Zuvela has said, you could still pursue this motion, but I don't think she can represent you and advocate for it. So you would be representing yourself and I would give the [district attorney's office] an opportunity to respond. [¶] Do you wish to pursue this motion representing yourself?"

Defendant responded: "I can't represent myself to that extent. I just -- I'm aware of the ethical portion on her. Like I said, she's done what she could, but it was just the continual delay that Vasquez wanted [*sic*] because the fact was he was sitting here for 17 years and never given the trial he requested, and they didn't just put it on his attorney, but they put it also on the [district attorney's] office for the delay and because they said -- and I'm just paraphrasing, 'They should have known within two years if he met the criteria or not.' "

After defendant and Zuvela discussed some of the facts surrounding defendant's SVP case, the trial court addressed defendant pertaining to his motion to dismiss: "Here's what I want to tell you about the motion to dismiss. You can pursue that if you wish. One thing the Court would need to see is a declaration -- a statement by you under oath saying these are the facts and the dates and the events that support this request. [¶] In the text of the motion you've made reference to things but I can't necessarily say that I

4

can tell from that there are facts that would justify the result that you're asking for.  Most motions are supposed to be accompanied by [a] declaration, a statement under penalty of perjury, saying these are the facts that relate to this motion . . . and based upon these facts and the law that I'm describing in the motion, this should be the Court's decision.  [¶] . . . [¶]  If you want to pursue that -- and you may have to do it on your own because it sounds like your attorney's position is since she is still your attorney and she would have to say she didn't do her job right and she doesn't believe that's true, she can't argue on behalf of you on this motion because at least it in part requires her to say she didn't do her job right.  [¶] . . . [¶]  You're going to have a couple months before a trial.  If you want to pursue this, I would ask that you submit at least a declaration to add to your motion.  [¶]  Until you do that, I won't be asking the district attorney to file a response because there isn't enough here right now to grant your motion, and I don't know if there will be or not, but we need a declaration for the motion to be presentable."

Defendant responded:  "It's just I have to have help in doing that stuff because I'm not really versed in the law, but I understand common sense and I understand how the law plays things and things, but as far as using the language of the law, I'm not really versed in that, so . . . ."  The trial court then concluded the hearing:  "I'll leave that issue in your hands, and I won't receive anything more from you.  [¶]  We'll never talk about this motion again and if you want to pursue it, you need to file a declaration and you'll send that to your attorney or to the Court and then we'll bring it up again."

II

DISCUSSION

The Act "authorizes the involuntary civil commitment of a person who has completed a prison term but is found to be a sexually violent predator."  (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 344.)  The Act is intended " ' "to protect the public from dangerous felony offenders with mental disorders and to

5

provide mental health treatment for their disorders." ' " (*State Dept. of State Hospitals*, at p. 344.)

When an SVP commitment petition is filed in the trial court, the court determines "whether the petition states or contains sufficient facts that, if true, would constitute probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release." (§ 6601.5.) If the petition meets this hurdle, the trial court conducts a probable cause hearing in accordance with section 6602. If, following that hearing, the trial court determines there is probable cause to believe the alleged SVP is likely to engage in sexually violent predatory criminal behavior upon his, her, or their release, the trial court orders a trial. (§ 6602.)

After a finding of probable cause on the commitment petition and while the alleged SVP awaits trial, he, she, or they is held "in custody in a secure facility." (§ 6602, subd. (a); see *People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888, 904.) Coalinga is the primary secure facility for commitment of a person for mental health treatment and operates under the control and direction of the State Department of State Hospitals. (§ 6600.05.)

The alleged SVP is entitled to the assistance of counsel and the court shall appoint counsel to assist an indigent person. (§ 6603, subd. (a).) "Because civil commitment involves a significant deprivation of liberty, a defendant in an SVP proceeding is [also] entitled to due process protections." (*People v. Otto* (2001) 26 Cal.4th 200, 209.) An SVP detainee's due process rights are entitled to protection during the period of his, her, or their pretrial deprivation of liberty. (*People v. Litmon* (2008) 162 Cal.App.4th 383, 399, 406 (*Litmon*).)

*Litmon* held alleged SVP's detained prior to trial have the right to a timely trial. (*Litmon*, *supra*, 162 Cal.App.4th at p. 399.) The *Litmon* court used the analytical framework of *Mathews* and *Barker* to assess whether a lengthy pretrial delay violated the fundamental requirements of due process. (*Litmon*, at pp. 399-405, 405-407, applying

6

*Mathews v. Eldridge* (1976) 424 U.S. 319, 335 [court balances three factors: private interest, value of other procedural safeguards, and government interest], *Barker v. Wingo* (1972) 407 U.S. 514, 530 [court weighs four factors: length of delay, "reason for delay, the defendant's assertion of his right, and prejudice to the defendant" from the delay].) The court concluded that, when an alleged SVP is civilly committed after a probable cause hearing, a lengthy pretrial delay is oppressive and prejudicial to the defendant. (*Litmon*, at pp. 405-406.)

Litmon charged the state with responsibility for issues such as "chronic, systematic postdeprivation delays in SVP cases that only the government can rectify," and postcommitment "delays due to the unwillingness or inability of the government to dedicate the resources necessary to ensure a prompt [Act] trial." (*Litmon, supra,* 162 Cal.App.4th at p. 403.) The court held: "[P]ostdeprivation pretrial delays in [Act] proceedings cannot be routinely excused by systemic problems, such as understaffed public prosecutor or public defender offices facing heavy caseloads, underdeveloped expert witness pools, or insufficient judges or facilities to handle overcrowded trial dockets." (*Ibid.*, fn. omitted.) The ultimate responsibility for bringing the alleged SVP to trial in a timely manner *rests with the government*, and the remedy for excessive pretrial delays is to dismiss the commitment petition. (*Id.* at pp. 399-406.)

Landau distinguished *Litmon* approximately five years later. (*People v. Landau* (2013) 214 Cal.App.4th 1, 27, 37-38.) The *Landau* court concluded the defendant's pretrial delay of seven years did not violate his due process rights because the vast majority of the delays were at his request or with his consent. (*Ibid.*) While the court agreed with the principle that the government bears ultimate responsibility for providing a timely trial (*id.* at p. 41), it concluded that principle did not mean an SVP detainee could seek to continue trial repeatedly and then complain that the court violated due process by granting his requests (*id.* at p. 37).

7

Approximately five years after *Landau*, the Court of Appeal in *Vasquez* held a 17-year pretrial delay violated an SVP detainee's due process rights to a timely trial. (*Vasquez, supra*, 27 Cal.App.5th at p. 41.) *Vasquez* noted the general rule is that delays caused by defense counsel and not caused by a systemic breakdown are properly attributed to the defendant. (*Id.* at p. 70.) The *Vasquez* court accordingly attributed the first 14 years of the delay to the defendant. (*Ibid.*) The remaining period of the delay, however, was caused largely by underfunding of, and dramatic staffing cuts at, the public defender's office. Those delays were attributable to the state. (*Id.* at pp. 71-72.) In addition, the trial court shared some responsibility for the delays, as it was required to find good cause to support continuances and take meaningful action to control the proceedings and protect the defendant's rights. (*Id.* at pp. 74-75.) Thus, where the trial court did not meet those obligations, the delays were also attributable to the state. (*Id.* at p. 74.)

Finally, in October 2020, the court in *Butler* agreed with *Vasquez* and *Litmon* that an SVP detainee has a due process right to a timely trial. (*In re Butler* (2020) 55 Cal.App.5th 614, 666.) *Butler* also agreed with *Vasquez* and *Litmon* that the prosecution, defense, and trial court shared responsibility for protecting the defendant's due process rights and bringing the matter to trial. (*Butler*, at pp. 641, 653-656, 660-661, 682-683.) *Butler*, however, rejected the claim that where responsibility for the delay overlapped between defense counsel and the state, the delay had to necessarily be attributed to the defendant. (*Id.* at p. 662.) Instead, *Butler* concluded those delays would have diminished weight against the defendant given the public defender ignored the defendant's demands for a timely trial and waived time without the defendant's authorization. (*Ibid.*) Accordingly, *Butler* concluded where state actors and the defendant were responsible for the same period of delay in bringing the defendant to trial, the ultimate obligation to bring an alleged SVP to trial in a meaningful time falls on the

state (even where the alleged SVP might prefer delay) and justifies charging the state with more responsibility for the delay. (*Id*. at pp. 662-664.)

The question presented here is whether the trial court violated defendant's statutory right to counsel when it instructed defendant to represent himself in bringing his motion to dismiss because his assigned counsel had an inherent conflict in arguing her own ineffective assistance of counsel. The answer is, "yes."

An alleged SVP's statutory right to counsel includes, as a matter of due process, the right to the effective assistance of counsel—the same right guaranteed to criminal defendants under the Sixth Amendment. (*Orey*, *supra*, 63 Cal.App.5th at p. 567.) "Included in the right to the effective assistance of counsel is 'a correlative right to representation that is free from conflicts of interest.' " (*People v. Bonin* (1989) 47 Cal.3d 808, 834.)

Generally, " '[c]ounsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest.' [Citation.] Fundamental to counsel's role is 'a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' " (*People v. Doolin* (2009) 45 Cal.4th 390, 411 (*Doolin*).) Indeed, "[c]ounsel's primary 'duty is to investigate the facts of his client's case and to research the law applicable to those facts.' [Citation.] Counsel's decisions regarding strategy and tactics must be rational and ' "founded upon adequate investigation and preparation." ' " (*Id.* at p. 423.) "[T]he role of defense attorney requires that counsel 'serve as the accused's counselor and advocate with courage, devotion and to the utmost of his or her learning and ability . . . .' [Citation.] Once an attorney is appointed to represent a client, he assumes the authority and duty to control the proceedings. The scope of this authority extends to matters such as deciding what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or reject, *what motions to make, and most other strategic and tactical determinations*. [Citations.] A refusal to participate in formulating or conducting a

9

defense is not generally among the available strategic options." (*People v. McKenzie* (1983) 34 Cal.3d 616, 631, fn. omitted, italics added.)

Relying on United States Supreme Court precedent, our Supreme Court in *Bonin* held: "When the trial court knows, or reasonably should know, of the possibility of a conflict of interest on the part of defense counsel, it is required to make inquiry into the matter. [Citations.] It is immaterial how the court learns, or is put on notice, of the possible conflict, or whether the issue is raised by the prosecution [citation] or by the defense [citation]. [¶] The trial court is obligated not merely to inquire but also *to act* in response to what its inquiry discovers. [Citation.] In fulfilling its obligation, it may, of course, make arrangements for representation by conflict-free counsel. [Citation.] Conversely, it may decline to take any action at all if it determines that the risk of a conflict is too remote." (*People v. Bonin*, *supra*, 47 Cal.3d at pp. 836-837, italics added, citing *Wood v. Georgia*, *supra*, 450 U.S. at pp. 272-273; see *Holloway v. Arkansas* (1978) 435 U.S. 475, 484.)

When the trial court violates its duty by failing "to inquire into the possibility of a conflict of interest or fail[ing] to adequately act in response to what its inquiry discovers, it commits error under *Wood* . . . ." (*People v. Bonin*, *supra*, 47 Cal.3d at p. 837.) "[S]o long as the trial court knew, or reasonably should have known, of the possibility of a conflict of interest, it is immaterial whether or not the defendant made any objection." (*Id*. at p. 839.) "To obtain reversal for *Wood* error, the defendant need not demonstrate specific, outcome-determinative prejudice. [Citation.] But he must show that an actual conflict of interest existed and that that conflict adversely affected counsel's performance." (*Id.* at p. 837.)[4]

---

[4] In *Mickens*, a case upon which our Supreme Court relied in *Doolin*, the United States Supreme Court explained that it has "spared the defendant the need of showing probable effect upon the outcome, and ha[s] simply presumed such effect, where

10

"In determining the effect of an asserted conflict of interest on counsel's performance, we consider whether ' "the record shows that counsel 'pulled [her] punches,' i.e., failed to represent defendant as vigorously as [she] might have had there been no conflict." ' " (*People v. Clark* (2011) 52 Cal.4th 856, 984.) " 'In undertaking such an inquiry, we are . . . bound by the record,' " unless the record does not reflect the omission. (*Doolin*, *supra*, 45 Cal.4th at p. 418.)[5] The record in this case is not silent as to why Zuvela declined to pursue the motion to dismiss; the record speaks, and we are thus bound by it.

Here, following the *Marsden* hearing, the trial court asked Zuvela if she had discussed whether to pursue the motion to dismiss with defendant, and Zuvela responded that, "in [her] mind," the trial court's denial of defendant's *Marsden* motion established she could not ethically pursue *the motion to dismiss* because the trial court found *she* did not breach *her* duty to defendant in pursuing a timely trial. In other words, Zuvela said she would not pursue defendant's motion to dismiss because she had an inherent and actual conflict in arguing *her* own ineffective assistance of counsel.

_____

assistance of counsel has been denied entirely or *during a critical stage of the proceeding*. When that has occurred, the likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary. [Citations.] But only in 'circumstances of that magnitude' do we forgo individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict." (*Mickens v. Taylor* (2002) 535 U.S. 162, 166, italics added; see *Doolin*, *supra*, 45 Cal.4th at p. 421.) Although a motion to dismiss undoubtedly qualifies as a critical stage in the proceedings (given, if it is granted, the commitment petition is dismissed), it appears our Supreme Court in *Doolin* held a showing of prejudice is required in every instance "outside the context of multiple concurrent representation." (*Doolin*, at p. 428.)

[5]      " '[W]here a conflict of interest causes an attorney not to do something' " and the record does *not* reflect such an omission, we " 'examine the record to determine (i) whether arguments or actions omitted would likely have been made by counsel who did not have a conflict of interest, and (ii) whether there may have been a tactical reason (other than the asserted conflict of interest) that might have caused any such omission.' " (*Doolin*, *supra*, 45 Cal.4th at p. 418.) That is not the case here.

As explained in *Vasquez*, *supra*, 27 Cal.App.5th at pages 60-61, however, the *Barker* test, which is used, in part, to analyze and determine whether a defendant's right to a timely trial was violated, is triggered when the length of the delay is presumptively prejudicial. Undoubtedly, the 12-year delay was presumptively prejudicial and triggered a timely trial analysis. (*Litmon*, *supra*, 162 Cal.App.4th at p. 405 [one-year delay "create[d] a presumption of prejudice that trigger[ed] a *Barker* type of balancing test"].) As explained *ante*, one of the key factors in determining whether a motion to dismiss for violating an alleged SVP's right to a timely trial has merit is the scope of and reasons for the delays caused *by the government*, i.e., *all state actors*.

Defendant attributed most of the 12-year delay in bringing him to trial to actions and/or inactions by the district attorney's office, Coalinga (the state's primary secure facility for the commitment of alleged SVP's), and defense counsel who represented him prior to Zuvela. In his draft motion to dismiss, defendant further attributed partial responsibility for the delay to the trial court, arguing the trial court "never exercised reasonable control over all the proceedings connected with this pending litigation." (Capitalization omitted.)

Zuvela did not address or discuss the propriety of defendant's claims of delay as to the foregoing state actors or any of the other *Barker* and *Mathews* factors in the context of the motion to dismiss analytical framework (especially for the delay prior to Zuvela's representation of defendant) when the trial court inquired as to whether she intended to pursue the motion to dismiss; nor did the trial court inquire whether Zuvela had done any investigation into the propriety of filing a motion to dismiss or if there was any tactical basis or ground for Zuvela's decision not to file the motion. Simply put, even though the timely trial right analysis was triggered by the presumptively prejudicial 12-year delay when defendant requested that Zuvela file a motion to dismiss, Zuvela refused to consider the merits of the motion because of her asserted inherent and actual conflict of interest.

Under these facts, the trial court committed *Wood* error because Zuvela's conflict of interest, which the trial court validated, adversely affected her performance.

The trial court should have inquired to determine whether there was a tactical reason for Zuvela's decision. In the absence of a tactical decision and if Zuvela continued to assert an inherent and actual conflict of interest as the basis for not pursuing the motion to dismiss, the trial court should have appointed substitute counsel to determine whether the motion to dismiss had any merit. (See *People v. Smith* (1993) 6 Cal.4th 684, 692, 695-696 [when the trial court determines appointed counsel cannot be expected to bring a motion based on his, her, or their own ineffective assistance of counsel, the " 'inherent conflict' " requires appointment of substitute counsel when the trial court is satisfied adequate grounds exist].) The trial court has the "duty to protect the rights of the accused and . . . to ensure a fair determination of the issues on their merits"; it may thus relieve counsel on its own motion, "even over the objections of defendant or counsel." (*People v. McKenzie*, *supra*, 34 Cal.3d at pp. 627, 629.) The trial court here violated defendant's statutory right to counsel.

Notably, *Bonin* dealt with the trial court's duties when it knows, or has reason to know, of counsel's conflict of interest. Our Supreme Court has not revisited the analysis in that opinion within *that context*. In *Mai*, however, our Supreme Court wrote that, when a defendant raises a claim on appeal that his, her, or their trial counsel had a conflict of interest, reversal is required only when the defendant can "demonstrate that (1) counsel labored under an actual conflict of interest that adversely affected counsel's performance, and (2) absent counsel's deficiencies arising from the conflict, it is reasonably probable the result of the proceeding would have been different." (*People v. Mai* (2013) 57 Cal.4th 986, 1009-1010.) To the extent the second showing is required for reversal of *Wood* error, that showing has been made as well (despite the absence of a meaningful record for review, as noted *post*). As already explained, the delay in this case was *presumptively prejudicial*. The trial court further attributed that delay to "what other

13

people did or didn't do," rather than attributing it to Zuvela's conduct in the case. In the absence of rebuttal evidence, we must conclude it is reasonably probable the result would have been different. (*State v. Alexis* (Fla. 2015) 180 So.3d 929, 936 [*Mickens* "explains that the presumption of prejudice means that the defendant whose right to the assistance of counsel has been violated need not show an effect on the outcome"], citing *Mickens v. Taylor*, *supra*, 535 U.S. at pp. 166-167; see *People v. Williams* (2006) 40 Cal.4th 287, 333 [a presumption of prejudice may be rebutted by a showing that no prejudice actually occurred].)

Defendant did not waive his right to counsel or make a *Faretta*[6] motion to represent himself. He instead repeatedly expressed his need for the assistance of counsel, a right to which he was entitled. As the majority appropriately notes, defendant, as a party represented by counsel, could not even file his own motion to dismiss in propria persona. (Maj. opn., *ante*, at p. 10; *People v. Clark* (1992) 3 Cal.4th 41, 173 [except for motions concerning representation, all motions and briefs of represented parties must be filed by counsel of record], disapproved on other grounds in *People v. Edwards* (2013) 57 Cal.4th 658, 704-705; see also *People v. Merkouris* (1956) 46 Cal.2d 540, 554 [" 'It is settled that the attorney of record has the exclusive right to appear in court for his client and to control the court proceedings, *so that neither the party himself* [citations], nor another attorney [citations], can be recognized by the court in the conduct or disposition of the case"].)

I disagree with the majority's statement that the motion to dismiss was functionally the equivalent of a *Marsden* motion or a quasi-*Marsden* motion. (Maj. opn., *ante*, at p. 10.) The purpose of a motion to dismiss is to evaluate whether the defendant's right to a timely trial was violated and not whether the defendant's appointed counsel

---

**6**    *Faretta v. California* (1974) 422 U.S. 806.

14

should be dismissed for all purposes. The remedies as to the two motions are also substantially different. If a *Marsden* motion is granted, substituted counsel is appointed—the defendant is not left without counsel. If a motion to dismiss is granted, the commitment petition is dismissed and the defendant no longer faces trial. In neither of those situations is the defendant left without the assistance of counsel.

If Zuvela had made a tactical decision not to file a motion to dismiss based on the facts known to her, there would have been no need to substitute counsel. (See *Orey*, *supra*, 63 Cal.App.5th at pp. 568-569 [counsel's decision not to file a motion to dismiss is a tactical decision and " '[t]actical disagreements between the defendant and his attorney do not by themselves constitute an "irreconcilable conflict" ' "].)

This case is not like *Orey*. In that case the defendant argued his counsel's refusal to bring a timely trial motion *created a conflict of interest*, and thus his *Marsden* motion should have been granted. (*Orey*, *supra*, 63 Cal.App.5th at pp. 564-565.) The defendant said his attorney made statements such as that "she would not file a *Vasquez* motion because 'that would require her to indicate that her coworkers didn't do their job and she couldn't do that.' " (*Id*. at p. 566.) In other words, the defendant in that case wanted to use his attorney's *decision not to file* a timely trial motion as a basis for demonstrating an actual conflict of interest in support of his *Marsden* motion. The appellate court in *Orey* concluded the "counsel's decision not to file a motion to dismiss the [Act] petition pursuant to *Vasquez* and *Litmon* was essentially a tactical decision," and thus did not establish an abuse of discretion as to the trial court's denial of the *Marsden* motion. (*Orey*, at pp. 568-569.) That was because " '[t]actical disagreements between the defendant and his attorney do not by themselves constitute an "irreconcilable conflict." ' " (*Ibid*.)

Here, defendant was not complaining about his counsel's *tactical decision* in declining to file a motion to dismiss; Zuvela instead declined to represent defendant regarding the motion because she had "done what [she] need[ed] to do." Zuvela relied on

15

the trial court's *Marsden* hearing analysis *as the reason to decline to file the motion to dismiss*. This is the exact opposite of what occurred in *Orey*. Further, the defendant's attorney in *Orey* did *not* state (as Zuvela did here) that the evaluation of the merits as to a timely trial motion presented an inherent and actual conflict of interest.

*People v. Sanchez* (2011) 53 Cal.4th 80 is also distinguishable. In that case, our Supreme Court considered "under what circumstances a trial court is obligated to conduct a hearing on whether to discharge counsel and appoint new counsel when a criminal defendant indicates a desire to withdraw a guilty or no contest plea on the ground that current counsel has provided ineffective assistance." (*Id.* at pp. 83-84.) Our Supreme Court agreed with the Court of Appeal "that the trial court erred by failing to hold a hearing on [the] defendant's informal *Marsden* motion concerning his representation by the public defender's office, by appointing substitute counsel without a sufficient showing that failure to appoint substitute counsel would substantially impair or deny [the] defendant's right to assistance of counsel, and by appointing substitute counsel for the limited purpose of evaluating defendant's reasons for wanting to withdraw his plea rather than appointing substitute counsel for all purposes." (*Id.* at p. 92.) The issue in that case was thus that the trial court appointed substitute counsel *in lieu of conducting a Marsden hearing*. (*Ibid.*)[7] Indeed, our Supreme Court further agreed with the Court of Appeal that " '[d]efense counsel, like the trial courts, should abandon their reliance on counsel specially appointed to do the trial court's job of evaluating the defendant's assertions of incompetence of counsel and deciding the defendant's new trial or plea withdrawal motion.' " (*Sanchez*, at p. 89.)

_____

[7] In *Sanchez*, "the trial court entrusted a second defense attorney to decide the issue of whether the defendant's current attorney was representing the defendant in a competent manner. [Citations.] This procedure was deemed improper because it amounted to an unlawful delegation of the court's decisionmaking authority." (*People v. Jackson* (2017) 8 Cal.App.5th 1310, 1317.)

16

Our Supreme Court concluded "a trial court is obligated to conduct a *Marsden* hearing on whether to discharge counsel for all purposes and appoint new counsel when a criminal defendant indicates *after conviction* a desire to withdraw his plea on the ground that his current counsel provided ineffective assistance only when there is 'at least some clear indication by defendant,' either personally or through his current counsel, that defendant 'wants a substitute attorney.' " (*People v. Sanchez*, *supra*, 53 Cal.4th at pp. 89-90, second italics added.)

Our Supreme Court recently, in *People v. Parker* (2022) 13 Cal.5th 1, clarified the procedural posture in and application of *Sanchez*. In *Parker*, "[f]ollowing the penalty phase but before a verdict had been reached, [the] defendant submitted a lengthy handwritten motion alleging trial counsel had been ineffective and had colluded with the court and prosecution. In response, the trial court appointed an attorney with the alternate public defender's office to investigate whether the claim was meritorious. After the attorney concluded the claim lacked merit, the trial court heard and denied [the] defendant's handwritten motion. At the hearing on that motion, the court stated its belief, given the high quality of advocacy provided by defense counsel and the alternate public defender's office, that there was no attorney with whom defendant would have been satisfied." (*Id*. at pp. 27-28.) On appeal, the defendant argued, among other things, that the "trial court erred by appointing the alternate public defender without relieving trial counsel." (*Id*. at p. 84.) Specifically, the defendant argued that the appointment of separate counsel "for the limited purpose of determining whether appointed trial counsel was ineffective ran afoul of [*Sanchez*], in which [the court] explained that if a defendant makes a showing during a *Marsden* hearing that the right to counsel was substantially impaired, 'substitute counsel must be appointed as attorney of record for all purposes.' " (*Id*. at p. 86.) Our Supreme Court disagreed.

Our Supreme Court explained that *Sanchez* was readily distinguishable because, in that case, the court "explained that if a defendant makes a showing during a *Marsden*

17

hearing that the right to counsel was substantially impaired, 'substitute counsel must be appointed as attorney of record for all purposes.' " (*People v. Parker*, *supra*, 13 Cal.5th at p. 86.) In *Parker*, however, "there was no request to substitute counsel" (i.e., there was no pending *Marsden* motion), the defendant had "submitted a handwritten note in which he merely asserted ineffective assistance as a basis for a new trial, and there was no showing that [the] defendant's right to counsel had been substantially impaired." (*Ibid.*) Our Supreme Court thus found *Sanchez* inapplicable and found no error in the trial court's procedure of appointing separate counsel to investigate the defendant's new trial motion based on ineffective assistance of counsel. (*Id.* at pp. 86-87.) As *Parker* demonstrates, the procedural posture in *Sanchez* was pertinent to the analysis and outcome in that case—a procedural posture that is absent in this case.

I further disagree with the majority's reliance on excerpts from the record to conclude that, "By filing a *Marsden* motion with a motion to dismiss, defendant attempted to create a conflict of interest by disagreeing with the tactic that the record indicates he had previously assented to." (Maj. opn., *ante*, at p. 13.) No record was made as to the motion to dismiss because, as the trial court noted, the motion was never filed or argued, the motion was not supported by evidence, and the district attorney's office never filed a response. The majority attempts to decide the merits of the motion to dismiss based on a record that does not provide an opportunity for meaningful review *because* defendant was denied his statutory right to counsel.

Under the majority's analysis, a defendant's motion to dismiss can always be construed as a *Marsden* motion when the alleged SVP's counsel cites an inherent conflict of interest in having to argue his, her, or their own ineffective assistance of counsel. Practically, that means, whenever a defendant seeks to file a motion to dismiss that potentially implicates the effectiveness of the defendant's appointed counsel, irrespective of how short a period the appointed counsel had been representing the defendant and the strength and merits of the motion, appointed counsel can decline to file the motion solely

18

based on an inherent conflict of interest.  I can comprehend of no reasoned analysis that logically reaches or endorses that result and believe such a rule would eviscerate a defendant's statutory right to counsel.

To be clear, I take no position on the merits of any potential motion to dismiss in this case.  My quibble is that defendant was left unrepresented when he had a statutory right to counsel and, in fact, had appointed counsel.  Given the *Wood* error here did not infect defendant's trial but instead occurred during a critical stage of the proceeding that could have obviated the need for trial, I believe the judgment should be conditionally reversed to give defense counsel (and potentially the trial court, if a motion is filed) an opportunity to consider the merits of the requested motion.  It would obliterate an alleged SVP's statutory right to counsel to find otherwise.


         /s/
         Robie, Acting P. J.

19